No. 13901

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

JACK RONALD SEITZINGER,

Defendant and Appellant.

---

Appeal from:  District Court of the Fourth Judicial District,
Honorable Jack Green, Judge presiding.

Counsel of Record:

For Appellant:

Smith, Connor, VanValkenburg & Larrivee, Missoula, Montana
Fred R. VanValkenburg argued, Missoula, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Denny Moreen argued, Assistant Attorney General, Helena, Montana
Robert Deschamps III, County Attorney, Missoula, Montana
Ed McLean argued, deputy County Attorney, Missoula, Montana

---

Submitted:  September 13, 1978

Decided: JAN 1 6 1979

Filed: JAN 1 6 1979

Thomas J. Kearney

Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendant appeals from a jury verdict and conviction of criminal mischief, section 94-6-102, R.C.M. 1947 and the increased sentence imposed, section 95-1506, R.C.M. 1947, by Missoula County District Court.

The facts are reconstructed from testimony adduced at trial.

At about 2:15 a.m. on January 7, 1977, Patrick Gordon was awakened by some loud banging. He went outside and found that it was coming from a trailer across the street. He called the police and during the two minutes it took Officer France to arrive, listened to glass breaking intermittently. His wife also watched and listened from their bathroom window. Officer France drove slowly by and parked his vehicle twenty-five to thirty yards from the trailer. He heard loud thumping noises, glass breaking and saw the silhouette of a person moving inside the trailer. He watched the figure kick the trailer door open, walk over to an idling car, open the passenger door, crawl over something and start to drive slowly away. Officer France pulled the car over. Upon questioning a cooperative Jack Seitzinger he was told that Seitzinger was trying to catch two cats inside the trailer, resulting in all the noise and breaking glass.

France testified that inside the trailer were broken windows, screens and cabinet doors. He observed that there were two cats in the trailer and that Seitzinger was unable to catch them. France also testified that Seitzinger had speculated that Kathy Tullier, who last occupied the premises, may have done the damage. Seitzinger later testified that Kathy might know who did the damage.

The defendant testified that he had lived in the trailer from May 1976 until October 1976 with Kathy Tullier, his daughter and her son. On January 5, 1977, he took them to the airport and put them on a plane to Louisiana where she and the children were to live with parents. At that time, the trailer was in fine condition according to defendant.

The testimony of defendant and his fiancé, Diane Phelps, was that the same night, along with some friends, they returned to the trailer to get some of his belongings and let Patty Fredricks look at the cats left behind. Later Patty left, followed by defendant who left the trailer unlocked in case Patty returned for a cat.

The owner of the trailer testified that he had been to the trailer the next night, January 6, 1977, at about 8:15 p.m. to either collect rent or see if it was vacant. He found it unoccupied with the door unlocked and the lights on. He saw nothing unusual about the trailer's condition at that time.

Both defendant and Ms. Phelps testified to the following course of events. On the eve of January 6, 1977, they had been to a bar and stayed until closing time. While there defendant consumed at most seven beers. After closing time they got something to eat and defendant said he had better get the cats out of the trailer. Thus, in the early morning hours (2:00 to 3:00 a.m.) of January 7, 1977, they went to the trailer. They entered together and found it a mess. For a period of fifteen to twenty-five minutes they tried to catch the cats, running into each other and making alot of noise. Defendant told Ms. Phelps to wait in the car and continued to search hurriedly for the cats. He lifted and dropped a couch, ran into walls and accidently knocked a flowerpot through a window. "Flustered," he tried to leave

-3-

and having difficulty opening the door; he kicked it open. Seitzinger testified that he got into the driver's side of the idling car and proceeded until stopped by Officer France. Upon returning to the trailer with France, Ms. Phelps observed that its condition was no different when they first arrived.

Jack Seitzinger was charged with criminal mischief, section 94-6-102(1)(a), R.C.M. 1947, to which he pleaded not guilty on February 14, 1977. Notice of State's intent to seek increased punishment was served March 2, 1977 and trial commenced March 14, 1977. Voir dire of jurors, opening statements and closing arguments of counsel were not recorded, apparently a customary practice in this locality unless specifically requested. Following a verdict of guilty and a hearing on designation of defendant as a persistent felony offender, he was sentenced to fifteen years in prison and designated a repeated felony offender for purposes of parole eligibility.

Defendant raises six issues which we address:

(1) Whether the District Court erred in denying defendant's motion to dismiss at the close of the State's case for failure to formally identify defendant as the accused.

(2) Whether there was sufficient evidence to support the verdict.

(3) Whether the mental state required for conviction of criminal mischief denied defendant due process is unconstitutionally vague or overly broad. Section 94-6-102(1)(a), R.C.M. 1947.

(4) Whether the District Court erred in failing to keep a verbatim record of the voir dire of jurors, opening statements and closing arguments of counsel.

(5) Whether there was an inadequate search for truth in the instant case necessitating a new trial.

(6) Whether the prosecution's invocation of the increased punishment statute denied defendant due process of law or whether it was timely served. Section 95-1506, R.C.M. 1947.

During presentation of the State's case-in-chief the only specific reference made to the defendant as the accused was by Officer France who identified him as "Mr. Seitzinger". Defendant contends the court erred in refusing to dismiss for the State's failure to sufficiently identify him. No authority is cited. He merely asserts that "normally" witnesses identify a defendant by pointing at him in open court as the person referred to. There is no statutory requirement that defendant be formally identified in this fashion. No danger of mistaken identity appears in the context of this case. While the ritual of pointing at defendant and announcing for the record to whom the witness points may add more than drama to a criminal trial, it is not a requisite element of the State's case and the District Court did not err in refusing to dismiss on defendant's motion.

Defendant's arguments concerning the sufficiency of evidence to support the verdict oscillate between two explanations for the damage to the trailer: that he did it accidentally trying to catch two cats, and that somebody else did most of the damage before he arrived on the scene.

Given the first explanation, defendant cites State v. Fitzpatrick (1973), 163 Mont. 220, 516 P.2d 605, as holding that to support a criminal conviction the evidence must not only be consistent with defendant's guilt but also

-5-

inconsistent with his innocence. Defendant's reading of the case is not quite complete. In Fitzpatrick, the Court went on to say that the jury is the fact-finding body in our legal system and is free to pick and choose the evidence it wishes to believe. State v. Fitzpatrick, supra at 226, 516 P.2d at 609. Under defendant's second explanation, he cites section 93-401-1, R.C.M. 1947, and State v. McGuire (1938), 107 Mont. 341, 88 P.2d 35, as declaring the "rule of un-contradicted evidence" allegedly violated by the jury in disregarding defendant's and Ms. Phelps' testimony that the trailer was damaged when they arrived. In State v. McGuire, supra, a shortage of state funds in defendant's possession was held insufficient to sustain a conviction of grand larceny where explained by defendant consistent with his innocence. The Court explained at the outset "the record is barren of any testimony that the defendant appropriated the money in question to his own use with the intent to deprive the state of its property". State v. McGuire, supra at 345, 88 P.2d at 35. In the instant case testimony of Officer France and the neighbors' clearly tend to incriminate defendant and the evidence was not, therefore, uncontradicted. See State v. Swazio (1977), _____ Mont. _____, 568 P.2d 124, 127, 34 St.Rep. 676, 681. The jury was at liberty not to believe the testimony of defendant and his fiance and find from credible evidence that defendant committed the offense.

Defendant contends his conviction of criminal mischief for "knowingly" causing damage to the property of another, section 94-6-102(1)(a), offends due process as either unconstitutionally vague or overly broad. As to overbreadth, he argues the offense fails to give an ordinary person fair notice that his contemplated conduct is statutorily forbidden. One of the declared purposes of our Criminal Code is "to

-6-

give fair warning of the nature of the conduct declared to constitute an offense." Section 94-1-103(1)(c), R.C.M. 1947. As to vagueness, defendant maintains conduct resulting in accidental damage cannot be criminally punished without a showing of criminal intent. In State v. Sharbono (1977), ____ Mont. ____, 563 P.2d 61, 34 St.Rep. 196, this Court stated:

> "What the legislature did, in enacting the Montana Criminal Code 1973, was to reduce the difficulty in this area by articulating general principles that shall apply when the definitions of a particular offense are ambiguous. The culpability requirements adhere to familiar concepts, purposely, knowingly. Upon the whole it is the person who means to do the thing that constitutes a crime, knows he is doing it, and knows that there is a substantial and unjustifiable risk in doing it, whose conduct warrants condemnation of the kind from which conviction results." State v. Sharbono, supra, 563 P.2d at 72, 34 St.Rep. at 211.

Acting knowingly as defined by section 94-2-101(27), R.C.M. 1947, is not acting accidentally. Defendant is not, therefore, being held criminally liable for accidental conduct.

A court reporter was not present to make a record of the voir dire of jurors or the opening statements or closing arguments of counsel. Apparently this is a customary practice in Missoula County and the Fourth Judicial District, unless a court record is specifically requested. Counsel other than trial counsel was appointed by the District Court to handle this appeal. In his brief to this Court, counsel asserts he is advised by the defendant that improper references to his prior criminal record were made during these unrecorded portions of the proceedings. In questioning during oral arguments counsel admitted he had consulted with trial counsel who was unable to remember any such reference. Nonetheless, counsel seeks reversal on the ground that the absence of a record denied the defendant due process of

-7-

law. He relies on a series of civil cases which held it reversible error for a court of record to fail to keep a verbatim stenographic record of the testimony at trial. In Re Gullette (1977), _____ Mont. _____, 566 P.2d 396, 34 St.Rep. 277; State v. Geary (1977), ____ Mont. ____, 562 P.2d 821, 34 St.Rep. 218; State ex rel. Stimatz v. District Court (1937), 105 Mont. 510, 74 P.2d 8. In each of these cases the absence of any court record rendered the proceedings below effectively unreviewable on appeal.

Here, we have a record of the evidentiary portion of the trial, but not of the voir dire or the opening and final arguments. It is impossible however, for this Court to reach defendant's specification of error upon vague and unsubstantiated statements of counsel.

We do not perceive this as necessarily stemming from the absence of a stenographic record but as a failure of counsel to properly raise the issue on appeal. For example, in State v. Musgrove (1978), ____ Mont. ____, 582 P.2d 1246, 35 St.Rep. 1179, this Court was faced with the allegation of improprieties occurring during an unrecorded jury view of premises. For the purposes of appellate review, affidavits of trial counsel, defense and state, provided a sufficient basis upon which to decide the issue. We see no reason why this was not attempted here, if in fact improper statements concerning defendants' prior record were made.

We question the propriety of automatically dispensing with a record of voir dire, opening and closing arguments. They are not, as argued by the State, "ancilliary" to the trial. For protection of the record, a trial court should order its court reporter to record the voir dire examination, the opening statements, and the final arguments. Moreover, diligent defense counsel should demand that these proceedings

-8-

be recorded.  Under the facts presented in this case however, we cannot hold that defendant was denied due process of law.

Defendant next contends the State's failure to call certain potential witnesses constituted an inadequate search for truth and under State v. Mickelson (1977), ____ Mont. _____, 565 P.2d 308, 34 St.Rep. 475, remand is appropriate. Defendant's reliance on State v. Mickelson, supra, is misplaced. There, conflicting and biased testimony upon which defendant's conviction rested would have been readily clarified by obtaining certain witnesses who were not called nor their absence explained.  The defendant here does not explain how the absence of Kathy Tullier's testimony or that of the members of the January 5, 1977 party would have added to his case or detracted from the State's.  No obstacle prevented his calling these persons on his behalf.  An adequate search for truth was undertaken by the State in this case and substantial credible evidence supported the jury's verdict.

Finally, defendant contends the prosecution's invocation of the persistent felony offender statute, section 95-1506, R.C.M. 1947, denied him due process of law or, alternatively, that notice thereof was not timely given.  Notice of intent to rely on the increased punishment provision was served March 2, 1977.  Twelve days later, on March 14, 1977, the case came to trial.  This Court has recently ruled notice given at any time prior to trial is sufficient for purposes of section 95-1506.  State v. Johnson (1978), ____ Mont. _____, 585 P.2d 1328, 1333, 35 St.Rep. 1596, 1602.  Absent a detailed showing that the provision was used "in an attempt to coerce defendant into waiving his right to a jury trial," State v. Sather (1977), ____ Mont. _____, 564 P.2d 1306, 1310, 34 St.Rep. 462, 467.  We find the manner and timing of the State's invocation adequately conformed with statute and due process.

The judgment and sentence imposed are affirmed.

-9-

_____
                Justice

We Concur:

_____
          Chief Justice

_____

_____

_____
                Justices

-10-