No. 82-251

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

DAVID A. MADERA and
GARY LAMERE,

Defendants and Appellants.

APPEAL FROM: District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable Mark P. Sullivan, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

David L. Holland, Butte, Montana
William M. Kunstler, argued, New York, New York
Brad L. Belke, argued, Butte, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Robert McCarthy, County Attorney, Butte, Montana
Pat Fleming & Ross Richardson, argued, Deputy County
Attys., Butte, Montana

Submitted: April 28, 1983

Decided: October 6, 1983

Filed: OCT 6 - 1983

_Ethel M. Harrison_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Gary LaMere and Dave Madera appeal from their convictions of robbery and felony theft in the District Court of the Second Judicial District, Silver Bow County. They also appeal from the sentences given them by the District Court of 50 years each in the Montana State Prison. We affirm both convictions.

On the night of October 3, 1981, two masked gunmen robbed the occupants of the Dumas Hotel, a reputed house of prostitution in Butte. To gain entry, one of the robbers posed as a patron. When the door was opened, the two men pushed their way in and proceeded to rob the four women they found in the building. The women were bound and threatened with death if they did not cooperate. After robbing the women, the men fled.

The police were notified a day or two later and an investigation was begun. Police officers watched LaMere's residence for three days. After observing no activity during this time, they contacted LaMere's landlord for information about LaMere. After being informed that LaMere was a suspect in their investigation, the landlord invited an officer to enter LaMere's apartment with him. The officer and the landlord entered the apartment and discovered that it had been recently abandoned. The apartment, which the landlord testified was always neat and clean, was strewn with garbage and contained no personal possessions. The landlord and the officer walked through the apartment, looked around, and then left. Later that day, the landlord signed a consent to search the apartment. During the search, the officers found what appeared to be a map of the layout of the Dumas Hotel

and a piece of pantyhose which the officers believed to be a mask worn by one of the robbers.

On December 10, 1981, an information was filed in the District Court charging LaMere with one count of felony theft and one count of robbery. The count of robbery was based upon section 45-5-401(1)(a), MCA, charging that LaMere "in the course of committing a theft, purposely or knowingly inflicted bodily injury upon [a woman]."

Shortly thereafter, on January 8, 1982, an information was filed against Madera charging him with criminal responsibility for one count of felony theft and one count of robbery, which was also based upon section 45-5-401(1)(a), MCA.

The information against LaMere was later amended so that the robbery count was based upon section 45-5-401(1)(b). LaMere was charged with "in the course of committing a theft, purposely or knowingly put[ting] a person in fear of immediate bodily injury." The information against Madera was never amended.

On February 2, 1982, the trials of Madera and LaMere were ordered consolidated by the District Court and trial began on March 2, 1982. The jury reached a verdict finding both defendants guilty of count I, robbery, and count II, theft. Both defendants now appeal their convictions and sentences to this Court.

In connection with the issues raised it will be explanatory to note that in each case counsel representing the defendant in the lower court is different from counsel representing each on this appeal.

## THE LAMERE APPEAL

Issue 1. The District Court erred in allowing the State to use rebuttal witnesses at trial when the State had failed to give notice of said witnesses as required by statute.

Section 46-15-301(3), MCA, requires the State, for the purpose of notice only and to prevent surprise, to furnish to the defendant and file with the clerk of the court, no later than five days before trial "or at such later time as the court may for good cause permit," a list of witnesses the prosecution intends to call as rebuttal witnesses to the defense of alibi, among other defenses.

Jury trial of these consolidated cases began on March 2, 1982. On the last day of trial, March 8, 1982, the State, without the notice required by section 46-15-301(3), presented rebuttal witnesses over the objection of counsel for LaMere.

LaMere claims that the State was aware of these witnesses before the trial, but failed to apprise LaMere of their existence. The State contends that since the attorney for LaMere refused to inform the State of the exact nature of LaMere's alibi, (but rather, claiming lawyer-client privilege, gave only the information required by statute,) the State did not know if the information possessed by the rebuttal witnesses would be relevant until the alibi witnesses testified at trial.

On Friday, March 5, 1982, LaMere's alibi witnesses testified that LaMere was in Wallace, Idaho, on October 2 and 3, 1981. The crime is alleged to have occurred on October 3. On Monday, March 8, 1982, the State notified LaMere of the rebuttal witnesses that would be presented. The State offered LaMere, through his counsel, the opportunity to talk

to the rebuttal witnesses. The rebuttal witnesses were from St. James Community Hospital in Butte, and they testified that LaMere had received attention at the hospital at 10:38 p.m. on October 2, 1981.

The District Court agreed with the State that until LaMere's alibi witnesses had testified, the State had no way of knowing what those witnesses would testify to, and until the testimony of the alibi witnesses, the rebuttal witnesses' testimony that LaMere was present in Butte on October 2, 1981, would not be relevant. The District Court also felt that the defense counsel were given adequate opportunity to talk to the rebuttal witnesses before they testified. On those bases, the District Court permitted the testimony of the rebuttal witnesses.

The State contends on appeal that it therefore gave notice to defendant's counsel at the earliest practicable time. In the meantime, defense counsel had refused to give the State copies of statements, if any, taken from the alibi witnesses, or to divulge the nature and extent of their testimony to the State.

LaMere points out that in State v. Johnson (1978), 179 Mont. 61, 585 P.2d 1328, this Court approved the limitation of testimony from the defendant's mother as to the whereabouts of the defendant during the time of the robbery, when the defendant had not given notice of an alibi defense; in McGuinn v. State (1978), 177 Mont. 215, 581 P.2d 417, this Court held that an alibi could not be relied on by the defendant since no notice of that defense was given as required by the then pertinent statute. LaMere contends that this Court has been quick to deny witnesses when the defendant has not given an alibi notice, and should be

equally prompt to deny State witnesses when it fails to give the statutory notice.

Finally, on this issue, LaMere contends that although the Montana statute is facially constitutional because it provides reciprocal revelation of alibi and rebuttal witnesses by the State and the defendant, the failure here of the State to give the 5-day notice has unconstitutionally deprived him of due process.

LaMere bases his constitutional argument by drawing on the decision in Wardius v. Oregon (1973), 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82. There the Supreme Court held that the due process clause of the United States Constitution forbids enforcement of alibi rules unless reciprocal discovery rights are given to the defendant. Our statute, section 46-15-301, MCA, provides for reciprocal rules as to notice, but LaMere contends that in actual practice here, and as his trial was conducted, he was deprived of his due process rights when he was not given notice of the rebuttal witnesses as provided in that section.

It must be noted, however, that the statute provides for unanticipated exigencies that may arise on trial, both for the defendant and the State. Thus, both as to the State and the defendant, the court may waive the time limitations for giving notice when "good cause" is shown. Here the State contends that it served the defendant with a list of its intended rebuttal witnesses at the earliest opportunity. Until the alibi witnesses testified on March 5, 1982, during the trial, the State contends it had no knowledge of what the alibi witnesses would testify to concerning the whereabouts of LaMere on the contested dates. Once the alibi testimony was presented the State, then being in a position to disprove

- 6 -

through the rebuttal witnesses that LaMere was not out of the State on the night preceding the robbery, as he contended, served the notice of its witnesses. The court ordered and the State was willing to give defense counsel an opportunity to talk to the rebuttal witnesses before they testified, but defense counsel refused the offer. No motion was made by defense for a continuance of the trial.

The statute in question obviously gives discretion to the District Court to permit additions to the witness list when good cause is shown; good cause must certainly be construed to include the amendment of the witness list because of evidentiary matters developed during the presentation of the case of either party, matters which require clarification or rebuttal by that party. The District Court may permit the amendment even after the trial has commenced, State v. Klein (1976), 169 Mont. 350, 547 P.2d 75. If surprise is claimed by the other party, the proper procedure when unrevealed witnesses are added is to ask for a continuance so that preparation may be made, State v. McKenzie (1976), 171 Mont. 278, 557 P.2d 1023, but here no continuance was requested.

Undoubtedly, the testimony of the rebuttal witnesses gravely effected defendant's alibi defense. The defendant had earlier refused to reveal to the State the substance of the testimony that his alibi witnesses would provide. He took a chance and his strategy failed. He was caught in a trap of his own making, and no constitutional or statutory impurity arose thereby.

Issue 2. The District Court erred in not granting LaMere's motion to suppress evidence seized as part of an

illegal search and by allowing the introduction of the same by the State at trial.

LaMere contends that the entry into his apartment by the detective in the company of the landlord the first time, without warrant, and only by consent of the landlord, was illegal because no exigency existed which excuses the lack of a warrant; the plain view doctrine may not be invoked by a person unlawfully on the premises; and the landlord had no authority to consent to the search by the detective. Moreover, LaMere contends there was no judicial supervision, because the items seized were not returned nor inventory made of them. LaMere contends that the requirement of filing an inventory and delivering a copy to the person from whose premises the property was taken should apply not only to a search conducted without a warrant, but also to a search conducted by consent or under color of consent. See section 46-5-301, MCA.

The detective went into the rental premises on October 7, 1981, in company of the landlord. The curtains had been drawn, no car was parked in front of the residence, there was no response when the landlord knocked on the door, LaMere's key was found inside, and there was garbage, including beer cans, paper sacks, empty cigarette packs, and a box spring and mattress with no bedding on it, lying on the floor. The landlord indicated that the apartment before that had always been neat and clean, and the landlord further stated that "it looks like their stuff is gone." The rent was unpaid for the month of October (due October 5) and there was no evidence that LaMere came to the apartment at any time after the robbery occurred or before his arrest on November 6, 1981.

- 8 -

Later when the detective obtained from the landlord a consent to search the apartment, he tagged the evidence and placed it in the evidence locker, but failed to bring it before a magistrate.

At trial a torn piece of paper which appeared to be a map of the floor plan of the Dumas Hotel was introduced and a piece of pantyhose which may have been used as a mask during the robbery was also introduced. These are the two exhibits which LaMere claims were illegally obtained.

Clearly, LaMere is not in a position to argue any infringement of his constitutional guarantees against unreasonable search and seizure in this case. He had departed the apartment at the time it was searched. His abandonment of the premises is undoubted. The defendant had disclaimed by his actions any right to object to the place being searched or the things seized. Section 46-5-103, MCA. State v. Callaghan (1964), 144 Mont. 401, 407, 396 P.2d 821, 824; Abel v. United States (1960), 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668. On abandonment by the tenant, the landlord was in possession of the apartment. He had authority under our statutes to consent to the search, section 46-5-101(2), MCA.

The search was made without a warrant, but there is no statutory requirement that items seized under a consent search be inventoried and reported to a magistrate.

Issue 3. The District Court erred in not considering the charge of theft as a lesser-included offense of the charge of robbery and the District Court should have dismissed one of the two counts.

LaMere was charged in count I with robbery in violation of section 45-5-401(1)(b), MCA, which provides:

"(1) A person commits the offense of robbery if in the course of committing a theft he:

". . .

"(b) threatens to inflict bodily injury upon any person or purposely or knowingly puts any person in fear of immediate bodily injury;. . ."

LaMere was charged in count II with theft in violation of section 45-6-301(1)(a), MCA, which states as follows:

"Theft. (1) A person commits the offense of theft when he purposely or knowingly obtains or exerts unauthorized control over property of the owner and:

"(a) has the purpose of depriving the owner of the property;"

The charge against LaMere also alleged that the property exceeded $150 in value which made the charge a felony.

The essence of LaMere's argument on this issue is that in order to prove a robbery, the State must prove a theft, and therefore the charge of theft is a lesser-included offense within the charge of robbery.

The "Blockburger test" (Blockburger v. United States (1932), 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309) states:

"The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.. . ."

However, in Iannelli v. United States (1975), 420 U.S. 770, 785, fn. 17, 95 S.Ct. 1284, 1294, fn. 17, 43 L.Ed.2d 616, 627, fn. 17, the Supreme Court explained the Blockburger test saying:

"If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.. . ."

Our statute, section 46-11-502(1), MCA, prevents prosecution for more than one offense, when one offense is included in the other.

In State v. Ritchson (1981), ___ Mont. ___, 630 P.2d 234, 38 St.Rep. 1015, we considered the Blockburger rule, and determined the applicable test is whether each charge requires proof of a fact which the other does not, to determine if there is indeed a lesser-included offense.

We look to the statutes and not to the facts of the individual case to make that determination. Ritchson, 630 P.2d at 237, 38 St.Rep. at 1018.

In interpreting the statutes defining robbery, and the statute defining theft, we note that to prove robbery, the State's case is complete if as an element of the offense it proves either misdemeanor or felony theft. However, in order to prove felony theft, the State must prove that the value of the property taken or unlawfully controlled, exceeds the value of $150, sections 45-6-301(1)(a) and (5), MCA. There is then an additional element of proof required to convict the defendant of felony theft that is not to be required for his conviction on the charge of robbery. In that situation, the Blockburger test is met and the theft in this case is not a lesser-included offense within the charge of robbery.

Issue 4. The District Court erred when it enhanced defendant's sentence under section 46-18-221, MCA.

When LaMere was sentenced by the district judge, his sentence included ten years for the use of a dangerous weapon as provided in section 46-18-221, MCA. LaMere contends that since the charging document did not mention a weapon as was the case in State v. Davison (1980), ___ Mont. ___, 614 P.2d 489, 37 St.Rep. 1135, and since he was not given notice of

any intent to seek enhancement, that his enhanced sentence was improper.

In passing sentence, the district judge found from the evidence that LaMere was in possession of a firearm during the commission of the crimes, and for that gave him an additional ten year sentence to run consecutively with the other sentences imposed.

While the amended information itself did not mention that LaMere used a weapon in connection with the crimes charged, the affidavit filed by the county attorney for leave to file the amended information recited that during the commission of the crime the two armed men continually had hand-weapons in their possession and threatened to use the same. Moreover, on March 2, 1982, the county attorney served defense counsel with a letter advising him that the State intended to invoke the enhancement section, section 46-18-221, MCA. In those circumstances, we find no error on the part of the District Court in utilizing the provisions of the enhancement statutes for use of weapons in determining the sentence to be imposed upon the defendant.

THE MADERA APPEAL

Issue 1. The District Court erred in not dismissing one of the counts against Madera because the elements of theft are included within the crime of robbery.

We have discussed this issue in connection with the LaMere appeal foregoing. Our holding on this issue is the same in the case of Madera.

Issue 2. The District Court erred in designating Madera a persistent felony offender where there was no evidence that Madera was the same person as the one whose felony record was introduced at the sentencing.

- 12 -

At the time of sentencing, the District Court added ten years at Montana State Prison to be served consecutively by Madera to the 50 year sentence previously imposed by the court. In other words, the district judge enhanced Madera's sentence under the provisions of section 46-18-502(1), MCA. The reason for the enhancement was that Madera had previously been convicted of aggravated assault and had been incarcerated at Montana State Prison. He had been released from Montana State Prison on August 25, 1981. The robbery and theft at the Dumas Hotel occurred on October 3, 1981.

The basis of Madera's contention on this issue is that there is no evidence that Madera was the same person whose prior record was introduced at the sentencing hearing.

In State v. Livermore (1921), 59 Mont. 362, 196 P. 977, this Court held the State must independently prove that the person whose record is introduced and the person being sentenced are one and the same. That case, however, was decided when there was no separate sentencing hearing provided under our statutes, where the defendant could take the stand and deny the allegations made in a presentence report. We held in State v. Radi (1979), ___ Mont. ___, 604 P.2d 318, 320, 36 St.Rep. 2345, 2347, under our present statutes, that when matters contained in a presentence report are contested by a defendant, the defendant has an affirmative duty to present evidence showing the inaccuracies contained in the report.

Although Madera had opportunity at the sentencing hearing to refute or contradict the information that was contained in the presentence report introduced through Craig Thomas, he chose not to take the stand or otherwise present

evidence to contradict or refute the prior convictions. He is therefore precluded from contesting this issue on appeal.

Issue 3. The District Court erred in designating Madera a persistent felony offender because he was not given notice of the State's intention to request such designation under section 46-18-503, MCA.

In order for the reader to understand this issue, we must first set out the pertinent parts of the statute which provide for sentencing persons designated as persistent felony offenders. Section 46-18-503, MCA, is the statute involved. The statute requires two notices to be given to the accused or his attorney. First notice must be given in writing to the accused or his attorney before the entry of a plea of guilty by the accused or before the case is called for trial upon a plea of not guilty, which notice must specify the prior convictions alleged to have been incurred by the accused. The notice and the charge of the prior convictions are not to be made public in any manner or in any manner made known to the jury before the verdict is returned upon the felony charge.

In this case, written notice was given by the county attorney to the accused through his counsel on March 2, 1982, before the case was called for trial. A copy of the written notice was not filed with the clerk of the District Court, however, in compliance with section 46-18-503, until after Madera had been convicted on the felony charges against him. On March 22, 1982, a copy of that notice was filed with the clerk, together with a motion to designate Madera as a persistent felony offender.

The second notice required under section 46-18-503, MCA, applies when the defendant is convicted. Then, the notice

that the State will seek persistent felony offender designation, which has previously been served upon the accused or his counsel, must be filed with the court before the time fixed for sentencing, and the court must fix a time for hearing with at least three days notice to the accused. In this case, when the notice, along with the motion to designate Madera a persistent felony offender was filed, the court made and entered its written order that a hearing on the motion be held March 26, 1982. The record does not show that a copy of this order or motion or notice of the same was served upon the defendant or his counsel. Madera contends that, because he was not served with the second notice, the court was without jurisdiction to sentence him as a persistent felony offender.

It is obvious from section 46-18-503, MCA, that the jurisdictional notice upon which the persistent felony designation must be founded is the first notice required to be given either before the entry of plea of guilty or before the case is called for trial upon a plea of not guilty. The record here positively indicates that the first notice was given. The second notice, however, is procedural rather than jurisdictional. Here the court made and entered an order providing for four days before a hearing would be held on the motion to designate Madera as a persistent felony offender. The accused and his counsel appeared before the District Court at the time and place set in that order for hearing. At that time, no objection was raised by counsel or the accused that the second notice, the notice of the hearing, had not been given to Madera. Nowhere in the record, or on briefs, does Madera show any prejudice to him because of the lack of direct written notice as to the time

of hearing on his designation as a persistent felony offender. When the sentencing hearing was held on March 26, 1982, the accused and his attorney were aware by virtue of the first notice given to them on March 2, 1982, that the State would seek Madera's designation as a persistent felony offender. The defendant was specifically informed in the notice given to him before trial that his persistent felony designation would be based on his prior conviction for aggravated assault in Lake County, Montana, for which he had received a sentence of ten years. Since Madera was fully informed of the charge which would be used against him, it cannot be urged that he was prejudiced by the failure to receive notice of the actual sentencing hearing, a hearing at which he appeared and did not contest the fact of the prior conviction itself.

It should be noted that at the sentencing hearing, when both LaMere and Madera were required to be present before the court, counsel for LaMere raised the objection that the State had failed to prove that LaMere was the identical person whose record was presented to the court. Counsel for Madera joined in all motions raised by LaMere's counsel but neither counsel objected on the ground of lack of proper notice.

We will not ordinarily consider questions of claimed error not previously raised or presented to the trial court. State v. Johns (1982), ___ Mont. ___, 653 P.2d 494, 497, 39 St.Rep. 2049, 2053.

Issue 4. The District Court erred in sentencing appellant to an additional ten years for the use of a firearm because there were no allegations in the information against him that he used, displayed or brandished a firearm or other weapon.

- 16 -

The District Court sentenced Madera to an additional ten years to be served consecutively after the remaining sentences under section 46-18-221, MCA, for engaging in the commission of robbery and theft while knowingly displaying, brandishing or using a firearm or other dangerous weapon.

In State v. Davison (1980), ___ Mont. ___, 614 P.2d 489, 496, 37 St.Rep. 1135, 1143, we held that section 46-18-221, imposing an additional mandatory sentence upon a defendant found guilty of an offense while knowingly using a dangerous weapon, did not provide for a separate substantive offense. We did, however, note in Davison that the charging document against him mentioned that he was armed with a knife while committing the crimes with which he was charged. We therefore held that the additional mandatory sentence could be imposed upon Davison without any violation of the Sixth Amendment of the United States Constitution which grants the accused the right to be informed of the nature and cause of the accusation against him.

Madera extrapolates from Davison that the charge or information against him must in some manner mention the use of a dangerous weapon before the mandatory sentence may be imposed, contending that otherwise he is deprived of a jury trial on the issue.

Madera raises two contentions under this issue: one, that the charging instrument must show that he used a weapon before he can be sentenced for the use of a dangerous weapon and; two, that since he was an accomplice and not the actual perpetrator of the crime, such an enhancement statute may not be used against him.

With respect to the first contention, we hold that the charging instrument, the information, need not contain within

it a specific allegation of the use of a firearm or other dangerous weapon if the charging instrument otherwise properly identifies the crime for which the defendant is charged. The statute providing for enhancement of the sentence where a dangerous weapon is utilized is one for punishment and not one to define an element of the crime charged. Therefore, the information need not specifically set forth that a weapon was used in the commission of the crime charged. Punishment is not and never has been considered a part of the pleading charging a crime. State v. Angus (Utah 1978), 581 P.2d 992, 995.

As a matter of fact, before Madera's case was called for trial, on March 2, 1982, the county attorney gave written notice to the accused and his counsel that the provisions of section 46-18-221, MCA, would be requested by the State in this case.

Madera's second contention relates to his insistence, running through several of the issues he raises here, that he was convicted as an accomplice and not as a perpetrator of the crime. Therefore, he contends he is entitled to the benefit of section 46-18-222(4), MCA, which provides that a defendant is entitled to a statutory minimum sentence, if "the defendant was an accomplice, the conduct constituting the offense was principally the conduct of another, and the defendant's participation was relatively minor."

The testimony of the principal witness for the State, the manager of the reputed "house," implicated Madera considerably more than merely as an accomplice. When she answered the knock on the door to her place, she looked out a little window and saw a short man outside who was jumping up and down and who said, "This is one hot Mexican, let me in."

She then opened the back door a few inches when suddenly another person burst through the door, grabbed her hand, and hit her on the head with a gun. The other person was wearing gloves, was 6 feet 2 inches tall, and wore a ski mask with figures on the ski mask. At the same time the first person, the short man, burst in wearing a stocking mask. They forced this woman and three others to lie down on the floor under threat of death, while they taped their mouths and hands with adhesive tape. Using threats, they demanded to know where the money was. She testified that both men had guns. The short man, whom she later identified as Madera, had a gun with a longer barrel on it than the other person's gun. After they found $200 that belonged to the principal witness, they took each of the other three girls upstairs and one by one extracted their money from them. The individual doing this was identified as a "little Mexican," Madera himself. The witness also described that the men poked their guns in the sides of the women and against their heads, telling them frequently that they were going to kill them; they kicked one so badly she couldn't walk the next day; the principal witness was struck very hard in the head so that her wound had to be treated by the other girls after the men had left. After the money had been extracted, they cut light cords from the various rooms and used them to tie their feet and heads together so that they would choke if they moved. There is more in the record, but what we have recounted is enough to indicate the full involvement of Madera in the commission of the crime. He is, therefore, not within the exception as an accomplice which would require a minimum mandatory sentence with respect to the use of a firearm in this case.

Issue 5. The District Court erred in instructing the jury on a different charge than the charge of robbery made against Madera.

Issue 6. The District Court erred in allowing the appellant to be tried, convicted and sentenced on crimes for which he was not charged.

Issue 7. The information against Madera was fatally defective because it did not apprise Madera of the nature and cause of the accusations for which he was charged and the time and place of the alleged offense was not stated.

We discuss issues 5, 6 and 7 together for clarity.

Madera was charged in the information as follows:

"DAVE MADERA is criminally responsible for the following counts:

"CT. I.  In the course of committing a theft, purposely or knowingly inflicted bodily injury upon [a woman].

"CT. II.  Purposely or knowingly exerted unauthorized control over property, to wit: cash, having a value in excess of $150.00 which was owned by [a woman] and had the purpose to deprive the owner of said property."

The information against Madera was never amended, and the foregoing charges in the information are the basis of the conviction of Madera.

We have recited in foregoing portions of this opinion the participation of Madera in the record as shown from the testimony of witnesses. Madera has never contested that the acts which we have recited occurred. He has continuously argued that his identification by the woman involved was faulty and nearly all of his case was directed to disprove or cast doubt upon her identification of him.

The court gave these instructions which are pertinent to Madera's conviction:

- 20 -

"INSTRUCTION 36

"A person commits the offense of Robbery if, in the course of committing a theft, he:

"purposely or knowingly puts any person in fear of immediate bodily injury, or purposely or knowingly inflicts bodily injury upon another.

"The phrase, 'in the course of committing a theft,' as used in this section includes acts which occur in an attempt to commit, in the commission of, in flight after the attempt or commission of theft.

". . .

"INSTRUCTION 38

"To sustain the charge that DAVE MADERA is criminally accountable for the commission of the ROBBERY at 45 East Mercury Street, Butte, Montana, the State must prove the following propositions:

"First:   That on or about October 3, 1981, a Robbery occurred at 45 East Mercury Street, Butte, Montana; and

"Second:   That the Defendant, DAVE MADERA, either before or during the commission of the ROBBERY, with the purpose to promote or facilitate the commission of the ROBBERY, did aid, abet, agree or attempt to aid the perpetrator(s) in the planning or commission of the offense of ROBBERY.

"If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you must find the Defendant, DAVE MADERA, guilty of the felony offense of ROBBERY.

"If on the other hand, you find from your consideration of all the evidence that either of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant, DAVE MADERA, not guilty of the felony offense of ROBBERY.

". . .

"INSTRUCTION 42

"This being a felony case, all twelve of your number must agree in order to find a verdict . . ."

The District Court also instructed the jury, in its instruction no. 1:

".  .  . The defendant David Madera, is, by information, accused of being criminally responsible for the commission of two (2) felony

- 21 -

offenses: ROBBERY and THEFT; said offenses are alleged to have been committed in Butte Silver Bow County, State of Montana, on or about the 3rd day of October, 1981."

No objection was lodged by the defendant or his counsel against the instructions when proposed and given.

We now recount the several contentions raised by Madera in connection with the charges against him and the instructions given by the court.

Madera points to the difference in court's instruction no. 36 from the language in the information. In the information, he was charged with purposely or knowingly inflicting bodily injury upon another. In the instruction, the court instructed that Madera could be convicted if he "purposely or knowingly puts any person in fear of immediate bodily injury, or purposely or knowingly inflicts bodily injury upon another."

Madera claims that a dual verdict was possible here under the instruction, because six of the jurors may have convicted him for knowingly inflicting bodily injury upon another, and the other six may have convicted him for putting a person in fear of immediate bodily injury. He contends there is a possibility that the verdict here was not unanimous.

We considered this same issue in State v. Warnick (1982), ___ Mont. ___, 656 P.2d 190, 39 St.Rep. 2369. We stated there that when there has been no objection to the instruction, there is no basis for appellate review of those instructions, citing State v. Powers (1982), ___ Mont. ___, 645 P.2d 1357, 39 St.Rep. 989. In addition, we stated that when the jury had been instructed as to the requirement of a unanimous verdict, and when each alternative presented to the

jury was supported by substantial evidence, the non-unanimous jury contention is not available. McKenzie v. Osborne (1981), 195 Mont. 26, 640 P.2d 368; Fitzpatrick v. State (1981), ___ Mont. ___, 638 P.2d 1002, 38 St.Rep. 1448.

Madera further contends that although he was charged as an accomplice in aiding and abetting the crimes of robbery and theft, the District Court "forgot the crime with which Madera was charged" and so he was tried as a principal. The jury verdict forms were those for a principal. Thus Madera claims that his rights under the Sixth Amendment to the United States Constitution and Article II, § 17, of the Montana Constitution were violated in his prosecution.

The answer to Madera's contentions is found in section 45-2-301, MCA, which states:

"A person is responsible for conduct which is an element of an offense if the conduct is either that of the person himself or that of another and he is legally accountable for such conduct as provided in 45-2-302, or both." (Emphasis added.)

Under the instructions in this case, the defendant was charged, tried and convicted for being responsible or accountable for the crimes of robbery and theft. The fact that the word "accountable" was not inserted before the words "robbery" and "theft" on the verdict forms does not have any bearing on the case. The jury was fully instructed as to the law under which the crime was committed.

Madera also alleges error in the failure of the information to list the time and place of the offense. He was, however, served with the State's application for leave to file information, in which it was recited that on October 3, 1981, a residence located at 45 East Mercury, Butte, Montana, was entered and robbed by two masked, armed men.

In State v. Longneck (1981), ___ Mont. ___, 640 P.2d 436, 438, 38 St.Rep. 2160, 2162, we held:

". . . the contents of the affidavit supporting a motion for leave to file an information may be considered in determining the meaning of the language contained in the information."

See also State v. Riley (1982), ___ Mont. ___, 649 P.2d 1273, 39 St.Rep. 1491, where we considered an attack on the sufficiency of an information and where the State had failed to declare the time and place of the offense as definitely as could be done. There we held that precision as to time was not necessary unless time is a material ingredient of the offense.

We find no merit in the allegations of error under issues 5, 6 and 7.

The foregoing seven issues were raised by one of Madera's counsel on appeal. Additionally, his other appellate counsel raised two issues on appeal which follow.

Issue 8. Whether the failure to record the voir dire, the opening statements, bench conferences, the closing statements, the jury charge, and the jury poll denied defendant due process of law.

None of the portions of the trial set forth in issue no. 8 were taken down by the court reporter during trial so no transcript or record of the same is available on appeal. Madera contends that he thereby has been deprived of due process of law.

There can be no doubt from the record that Madera's then trial counsel waived those portions of the record not recorded.

In State v. Seitzinger (1979), 180 Mont. 136, 589 P.2d 655, the transcript available to appellate counsel, who, as

in this case, were different from trial counsel, did not include the voir dire and the opening and closing arguments. There the defendant argued that the failure to record the voir dire and opening and closing statements constituted reversible error. We rejected that contention because "it was impossible for this Court to reach defendant's specifications of error upon vague and unsbustantiated statements of counsel" and because appellate counsel had not made efforts through means of affidavits of trial counsel to pinpoint the errors in the unreported sections of the trial.

Appellate counsel state that they have attempted to obtain from the trial counsel the unrecorded errors that were made but through human failure such errors cannot be pinpointed. Nevertheless, in the Seitzinger decision, we stated that for the protection of the record, a trial court should order its court reporter to record the voir dire examination, the opening statements and the final arguments and that diligent defense counsel should demand that these proceedings be recorded. 180 Mont. at 143, 589 P.2d at 659.

Appellate counsel contend that the foregoing dictum in Seitzinger now requires that the failure to provide an adequate trial transcript in this case is reversible error. Madera's appellate counsel rely on United States v. Selva (5th Cir. 1977), 559 F.2d 1303, where the Court held that the inability to produce the trial record places no burden on an appellant to show specific prejudice in order to obtain relief of violations.

The State urges here that we should adopt the rationale of Seitzinger and refuse to reverse upon vague unsubstantiated allegations of error in the omitted portions of the record and that we could prospectively state in our

opinion that any future failure to record all portions of a trial will be grounds for an automatic reversal.

We have nothing before us that would indicate that anything prejudicial occurred during the unreported portions of the trial. We agree with the State that it cannot be an automatic reversible error to omit portions of the record upon specific waiver of defense counsel. That trap could be too easily sprung, with no appreciable gain in the interest of the efficient administration of justice.

Issue 9. The failure of defendant's trial counsel to insist on recording all parts of the trial and his affirmative waiver of reporting of the voir dire and opening and closing statements constituted ineffective assistance of counsel.

Here Madera claims through his appellate counsel that Madera was deprived of his Sixth Amendment right to effective assistance of counsel because his trial attorney affirmatively waived the reporting of the voir dire and the opening and closing statements, and did not insist on the reporting of the charge, the poll of the jury, and bench conferences. Madera contends that trial counsel's failure to protect the record created a situation which makes it impossible for him to receive a meaningful appellate review of the conviction which resulted in "a draconian sentence." It is contended that the obligation to protect the record is within the "range of competence demanded of attorneys in criminal cases;" State v. Rose (1980), ___ Mont. ___, 608 P.2d 1074, 1083, 37 St.Rep. 642, 652.

Madera contends that his claim of ineffective counsel raised here rests on a decision made by trial counsel that could not possibly have been part of any trial stragedy, had

nothing to do with adequate preparation, and was not the result of any lack of knowledge of the relevant law. It was instead a failure to observe the elementary principle of trial conduct that the protection of the record is a necessity.

The State contends that under Rose, we stated that in order to find the attorneys' failures sufficient for reversal, we must be able to say that there are errors a reasonably competent attorney acting as a diligent, conscientious advocate would not have committed, for that is the constitutional standard.

This issue gives the Court a good deal of concern. The Court is not in a position to say definitively that no error occurred in the voir dire, or in the opening and closing statements, or other omitted portions of the trial record, because we do not have a record to which we can point in making such statement. Yet our review of the entire record in this case leads us to the firm conviction that LaMere and Madera are guilty of the crimes charged against them beyond any reasonable doubt. The number and complexity of the issues raised by counsel, based on the record made by trial counsel, is an indication that defendant indeed received effective assistance of counsel during the trial. Our rationale in handling Seitzinger, involving nearly the same issues, leads us to the conclusion that such rationale is the best course for us to adopt in connection with the Madera appeal. We therefore decline to determine that Madera was not effectively assisted by counsel during his trial simply because certain portions of the record were omitted by waiver of counsel. More definitive allegations of error are

necessary in the unreported portions to give rise to our conclusion that Madera was deprived of due process.

There is no need for us to adopt a prospective rule that in the future all cases having portions of the record omitted, whether by inadvertence or omission of counsel, shall be an automatic ground for reversal of a conviction. We will look at each case on its merits when that issue is raised.

We therefore affirm the convictions of both LaMere and Madera.

_____
                    Justice

We Concur:

_____
        Chief Justice

_____

_____

_____
        Justices

-28-

Mr. Justice Frank B. Morrison, Jr. dissenting in part:

I concur in all aspects of the majority opinion except for issue one in the LaMere appeal. This partial dissent is addressed only to that issue.

LaMere properly noticed alibi witnesses. These witnesses placed LaMere in Wallace, Idaho on October 2 and 3, 1981. The crime is alleged to have occurred on October 3rd.

The State could destroy the alibi defense and totally undermine LaMere's credibility by showing that LaMere received medical attention at St. James Community Hospital in Butte at 10:30 p.m. on October 2, 1981. Rather than reveal this evidence, the State sought to trap LaMere. LaMere was permitted to present his alibi witnesses showing he was in Wallace, Idaho on October 2 and 3. These witnesses testified on Friday, March 5. On Monday, March 8, the State notified LaMere that the rebuttal witnesses would be presented. LaMere's testimony was already in the record. A continuance would have availed LaMere nothing. His defense was about to be destroyed and no continuance could have changed that.

It certainly can be effectively argued that LaMere got exactly what was coming to him. He apparently presented a false alibi and the State was permitted to expose the perjury. Under these circumstances justice would seem to have been served.

As an appellate jurist I had no right to disregard clear statutory law regardless of result. Section 46-15-301(3), MCA provides as follows:

> "For the purpose of notice only and to prevent surprise, the prosecution shall furnish to the defendant and file with the clerk of the court no later than five days before trial or at such later time as the court may for a good cause permit a list of witnesses the prosecution intends to call as rebuttal witnesses to the defenses of justifiable use of force, entrapment, compulsion, alibi, or the defense that the defendant did not

have a particular state of mind that is an essential element of the offense charged." (emphasis supplied)

The facts are undisputed. The State did not furnish a timely notice. No good cause was shown. In my opinion we have no alternative but to reverse LaMere's conviction and remand for a new trial.

The majority opinion seeks to explain good cause on the basis that the defense did not apprise the prosecution of what the alibi witnesses were going to testify about and therefore the State is excused from noticing rebuttal witnesses. The law does not require the defense to apprise the prosecution of the substance of an alibi witness' testimony. The law only requires that the defense give notice of the witnesses. This was done. The State had every right to interview the witnesses and if they refused to be interviewed then the State could take their depositions pursuant to 46-15-201, MCA.

There simply is no basis for the State's noncompliance with the notice statute. The State, in violation of the specific provisions of the statute, was permitted to "ambush" the defendant with surprise witnesses.

I must confess that I personally feel that LaMere was shown to be guilty. Under these circumstances it is always tempting to apply the "clearly guilty" rule. Nevertheless, the statute is clear and I have no alternative but to vote for a reversal.

_____
Justice

I join in the dissent of Mr. Justice Morrison.

_____
Justice

30