No. 81-273

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

MIKE WELLING,

Defendant and Appellant.

Appeal from: District Court of the Ninth Judicial District,
In and for the County of Glacier, The Honorable
R. D. McPhillips, Judge presiding.

Counsel of Record:

For Appellant:

Charles L. Jacobson, Conrad, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena,
Montana
James C. Nelson, County Attorney, Cut Bank,
Montana

Submitted on Briefs: February 4, 1982

Decided: July 8, 1982

Filed: JUL 8 - 1982

Thomas J. Kearney
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendant appeals from a Glacier County District Court judgment of conviction for burglary and from a finding at sentencing that he was a persistent felony offender.

First, he claims that an instruction impermissibly allowed the jury to infer that he acted with a criminal intent. (The jury was permitted to infer that he intended to commit a theft by the fact that he was apprehended while unlawfully in a bar after it had closed.) Second, he claims that the prosecutor unfairly prejudiced the jury against him by asking a witness, who was a lawyer, if he had ever defended the defendant. Third, he claims that because he chose to go to trial rather than plead guilty, the trial judge was vindictive in imposing a 13 year sentence. Fourth, he claims that we should order a resentencing because the State had not properly notified him after trial of its intent to have him declared a persistent felony offender. We affirm on all the issues except the last; we remand for resentencing.

At approximately 3:00 a.m. on September 7, 1980, the defendant was arrested in the Wagon Wheel Bar in Cut Bank, Montana, after witnesses observed him kick in the bar's door. He was charged with burglary in Glacier County District Court, and on September 24, 1980, defense counsel was notified in writing of the State's intention to have the defendant designated a persistent felony offender for sentencing purposes. Plea negotiations took place, but when no agreement was reached, a trial was scheduled for January 12, 1981. On the morning before trial, the State met with the defendant and defense counsel at defense counsel's request and presented

a brief synopsis of the State's case.  The parties then selected a jury and the State made its opening statement.

At this point, defense counsel requested a recess and presented the court with an executed, written plea bargain agreement in which the defendant agreed to plead guilty to burglary in exchange for the State's recommendation that he be imprisoned for five years.  After extensive questioning by the court, defense counsel moved to withdraw the not guilty plea and substitute a guilty plea, pursuant to the written plea bargain agreement.  Upon further questioning by the court, the defendant admitted that he broke down the bar's door and entered the bar after hours, but that it wasn't his purpose to commit an offense therein.  He explained that he had broken into the bar to look for his lost wallet. After more questioning, the defendant stated that he wanted to plead not guilty to burglary, but guilty to breaking into the bar.  The trial judge advised him that the court couldn't prevent him from pleading guilty, and that the court preferred that he go to trial if he wanted to tell the jury his story. The court also informed the defendant that the plea bargain agreement did not mention the fact that the State was seeking to have him designated a persistent felony offender, and that this designation could increase his sentence.  The defendant, however, chose to proceed with trial.

At trial, the arresting officer testified that the defendant stated at the scene that he had passed out or fallen asleep in the bar and had become locked in.  When the defendant took the stand, however, he testified that he had lost his wallet earlier in the evening on September 6, 1980, and remembered that he used the bathroom in the Wagon Wheel

Bar sometime during the course of the evening. He testified that he had kicked in the bar's door to look for his wallet. But when the police booked the defendant into the jail, the defendant had a wallet in his possession. The defendant explained that upon realizing that he had lost his wallet, he took an older wallet from his home and habitually put it in his pocket, after checking to see if he had left any extra money in it.

On February 4, 1981, the day of sentencing, the State filed its first written notice of intent to have the defendant designated a persistent felony offender. The court took judicial notice of the fact that it had previously entered a judgment against this same defendant on May 8, 1975, after he had been convicted of theft in Toole County, Montana. The court also found that it had sentenced the defendant to imprisonment after revoking his suspended sentence for that crime on October 7, 1976. The court found that the notice of intent had been given to defendant's counsel in sufficient time to invoke the persistent felony offender statute. The court then sentenced him to 13 years of imprisonment as a nondangerous, persistent felony offender.

First, the defendant contends that it was reversible error for the trial court to instruct the jury that it may or may not _infer_ that the defendant intended to commit a theft while inside the Wagon Wheel Bar. The trial court instructed the jury: ". . . if you find that the defendant was unlawfully in the Wagon Wheel Bar in the nighttime you may or may not infer, as you find the evidence to be, that he was there for the purpose of committing a theft." (Emphasis added.) Defendant claims that the instruction unconstitutionally shifted the burden to him to prove that he was not acting with this intent. We disagree.

-4-

A criminal state of mind is rarely susceptible of direct proof, and therefore, must usually be inferred from the facts as established by witnesses, and the circumstances as developed by the evidence. See e.g., State v. Hardy (1980), ___ Mont. ____, 604 P.2d 792, 37 St.Rep. 1. Further, in State v. Pascgo (1977), 173 Mont. 121, 125, 566 P.2d 802, we recognized the ". . . obvious inference that a person found unlawfully on the premises of another in the nighttime is there for the purpose of committing a theft." Here the defendant was not only found in the Wagon Wheel Bar at approximately 3:00 a.m., but witnesses saw him kicking in the bar door, and the defendant offered inconsistent explanations for his presence in the bar.

The real question is whether this challenged jury instruction was a permissive rather than a mandatory inference, for a court should uphold a permissive inference. See State v. Olson (1979), 39 Ore.App. 383, 592 P.2d 273; State v. Durning (1967), 71 Wash.2d 756, 430 P.2d 546. Cf. Gaines v. State (1980), 96 Nev. 561, 613 P.2d 409 (A court should not uphold a mandatory instruction). In this case, however, the challenge was clearly worded as a permissive inference: ". . . you _may_ or _may_ _not_ infer, as you find the evidence to be . . ." (Emphasis added.) In addition, other instructions properly explained the term "infer," and clearly instructed the jury to presume the defendant innocent, until the prosecution established each essential fact beyond a reasonable doubt. Therefore, the instruction was proper.

Second, defendant contends the prosecutor unfairly prejudiced the jury by asking a rebuttal witness, who was also an attorney, whether he had ever defended the defendant. Although this question was interrupted by defense counsel, and no answer was given, the defendant still argues that this

-5-

question constituted reversible error because it effectively prejudiced the jury against the defendant. We reject this contention.

During the trial, a question arose concerning whether the defendant had been in the nearby town of Shelby, Montana, a few hours before he had broken into the bar in Cut Bank. The defendant answered that he had not been in Shelby that night. The State, in rebuttal, called James A. Johnson, a private attorney and a parttime deputy attorney for Toole County. In an attempt to evoke Johnson's testimony that he had spoken with the defendant in a Shelby bar a few hours before the defendant had broken into the Cut Bank bar, the prosecutor asked Johnson if he had ever defended the defendant. The defendant contends the question was asked solely to inform the jury that he had been in trouble before and to therefore effectively cast doubt on his credibility. We do not find the question to be reversible error here. We do, however, caution against the use of this subtle method for bringing the jury's attention to the fact that the defendant may have been convicted or charged with other crimes.

The prosecution presented ample evidence to prove the defendant's guilty absent such methods. Therefore, if the State did effectively diminish defendant's credibility by such methods, the resulting effect on the jury would not have changed the verdict. The record shows that defendant himself had established his lack of credibility. In his testimony, the defendant not only admitted the unlawful entry, but sought to explain it by a scenario about his lost wallet. Yet, when confronted with the evidence that he had a wallet on his person when arrested, he could only explain that he had gone home to obtain another wallet before he broke into the bar. However, the record shows the defendant

-6-

told the arresting officer, at the scene of the crime, that he had fallen asleep, or passed out in the bar and had been mistakenly locked in. The defendant gave the jury ample inconsistent statements by which it could disbelieve his testimony, and therefore we do not find the defendant's argument sufficient to order a new trial.

Third, the defendant contends that the trial court acted vindictively by sentencing him to 13 years of imprisonment after persuading him to abandon the plea bargain. We find that the trial court acted properly by letting the defendant proceed to trial. After extensive questioning, the trial judge was unsatisfied that the defendant intended to commit a theft while inside the Wagon Wheel Bar. Further, the defendant stated several times during the questioning that this was not his intent. Therefore the trial court was understandably hesitant to accept a guilty plea.

The defendant relies upon the principle announced in North Carolina v. Alford (1970), 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162, that a court may accept a guilty plea if satisfied that there was strong evidence of guilt, even though the defendant, while offering to plead, denies that he was in fact guilty. But Alford does not require the court to accept a guilty plea under such circumstances. In dicta, the Court explicitly rejected that notion. 400 U.S. at 38, n. 11. Consequently, the decision to accept a guilty plea is left to the sound discretion of the trial court and we find no abuse of discretion here. The trial court fully satisfied the requirements this Court set forth in previous cases for determining the voluntariness of a guilty plea. See e.g., State v. Huttinger (1979), ___

-7-

Mont. ___, 595 P.2d 363, 36 St.Rep. 945; State v. Lewis (1978), 177 Mont. 474, 582 P.2d 346; State v. Azure (1977), 175 Mont. 189, 573 P.2d 179. If a trial court doubts whether an accused is voluntarily entering a guilty plea, it should resolve the doubt by proceeding to a trial on the merits. Huttinger, supra, 595 P.2d at 367. See State v. Doty (1977), 173 Mont. 233, 566 P.2d 1388.

Fourth and finally, the defendant contends, and the State concedes, that this case should be remanded for resentencing because the trial court was without jurisdiction to sentence the defendant as a persistent felony offender. Section 46-18-503, MCA, provides that if the accused is convicted of a felony with which he has been charged, the State must file written notice of it's intention to have the defendant sentenced as a persistent felony offender, so the defendant receives at least three days notice before the sentencing hearing. This was not done here, and we therefore remand for resentencing with proper notice given to the defendant. Upon remand, since this is a new sentencing hearing, the trial court must comply with our holding in State v. Baldwin (1981), ___ Mont. ___, 629 P.2d 222, 38 St.Rep. 882. Baldwin held that a judge who participates in plea bargaining, must, if the bargain is not completed, state for the record the reasons supporting a sentence greater than the defendant offered prior to trial. Here, the trial court stated that it would have given the defendant the State's recommended five year sentence if he had pled guilty, but gave no clear reasons for imposing the 13 year sentence.

Accordingly, we affirm the conviction but remand for resentencing.

Daniel J. Shea
                                              Justice

-8-

We Concur:

_Frank I. Haswell_
Chief Justice

_[signature]_

_John C. Sheehy_

_Frank B. Morrison_
Justices