No. 83-492

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

DONALD RAY SAGE,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Third Judicial District,
In and for the County of Granite,
The Honorable Robert Boyd, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

C.F. Mackay, Public Defender, Anaconda, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Joe R. Roberts, Asst. Attorney General, Helena
J. Allen Bradshaw, County Attorney, Philipsburg,
Montana

---

Submitted on Briefs: Jan. 30, 1986

Decided: April 29, 1986

Filed: APR 29 1986

_Ethel M. Harrison_
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Donald Sage was charged with the offense of deliberate homicide for the killing of Clyde Gregory. After trial before a jury in the District Court of the Third Judicial District, Sage was convicted of mitigated deliberate homicide. We affirm that conviction.

Donald Sage and his wife operated the Club House Cafe under a lease held by Robert DeRosia. After investing time and money into the business, Sage received notification on October 6, 1981, that his lease was being cancelled. Sage was upset by the termination, and on the evening of October 7 he began having a few drinks with friends at various bars. Around eleven o'clock that evening, a few friends of his came over to his house. Sage continued to drink and also took a dose of L.S.D. Sometime later they decided to go to the Thirsty Dog Saloon in Phillipsburg, Montana. Before leaving, however, Sage took out his .22 caliber pistol. He said that he wanted to shoot out the windows at DeRosia's business to get back at him for cancelling his lease.

Sage entered the Thirsty Dog Saloon at approximately 12:30 a.m. on October 8, 1981 wearing his pistol in a holster on his right hip. His friends were seated at various places in the Saloon but he went to the far end of the bar. Clyde Gregory, the bartender, was the only other person at that end of the bar. A short time later, a gunshot was heard by everyone in the Saloon, and all eyes immediately turned toward Sage. Several witnesses testified that they saw Sage holding his pistol in both hands with arms extended pointed directly at Gregory. Then, Sage slowly withdrew the gun, put

2

it back in its holster, and walked out the back door. Gregory was killed instantly.

Sage maintains that he was handing the gun to Gregory, and as he was doing so it slipped out of his hands and accidentally discharged. The only other witness who tends to corroborate this version of the shooting is Sage's wife, although she did not see the actual firing of the shot.

Appellant asserts that there are four errors which require reversal of the conviction:

(1)  The prosecution was allowed to introduce rebuttal testimony to an affirmative defense without furnishing appellant with the statutorily required notice.

(2)  The prosecutor's pretrial conduct was improper and prejudiced appellant's case.

(3)  Appellant did not have the necessary state of mind to commit the offense.

(4)  The verdict was not supported by substantial credible evidence.

We will discuss these issues in the order presented.


I

The prosecution offered the testimony of witnesses Martha Dietz and Candace Leistiko for the purpose of rebutting appellant's contention that he did not have the necessary state of mind required for the offense of deliberate homicide. However, the prosecution did not notify appellant that it intended to use those witnesses' testimony for such a rebuttal. Appellant contends that this failure is a violation of § 46-15-301(3), MCA, (1983). [Although in effect at the time of trial, this statute has recently been

3

repealed and replaced by §§ 46-15-322 - 46-15-323, MCA.]

Section 46-15-301, MCA, (1983) provided in part:

> (2) For purpose of notice only and to prevent surprise, the defendant shall furnish to the prosecution and file with the clerk of the court, at the time of entering his plea of not guilty or within 10 days thereafter or at such later time as the court may for good cause permit:
>
> (a) a statement of intention to interpose the defense of justifiable use of force (formerly self-defense), entrapment, compulsion, or alibi or the defense that the defendant did not have a particular state of mind that is an essential element of the offense charged; and
>
> (b) if the defendant intends to interpose any of these defenses, he shall also furnish to the prosecution and file with the clerk of the court the names and addresses of all witnesses other than the defendant to be called by the defense in support thereof. Prior to trial the defendant may, upon motion and showing of good cause, add to the list of witnesses the names of any additional witnesses. After the trial commences, no witnesses may be called by the defendant in support of these defenses unless the name of the witness is included on the list, except upon good cause shown. This subsection does not apply to rebuttal witnesses.
>
> (3) For the purpose of notice only and to prevent surprise, the prosecution shall furnish to the defendant and file with the clerk of the court no later than 5 days before trial or at such later time as the court may for good cause permit a list of witnesses the prosecution intends to call as rebuttal witnesses to the defenses of justifiable use of force, entrapment, compulsion, alibi, or the defense that the defendant did not have a particular state of mind that is an essential element of the offense charged.

At no time before the trial began did appellant give any notice to the prosecution that he intended to interpose the affirmative defense of lack of a particular state of mind

4

to commit the offense charged. Furthermore, appellant did not provide the prosecution with a list of the witnesses he intended to call in support of this defense. The prosecution's burden of providing statutory notice of rebuttal witnesses does not arise until the defendant has given notice that he intends to interpose an affirmative defense. Unless the prosecution is made aware of what defense the defendant intends to use, it cannot possibly furnish a list of witnesses intended to rebut that defense. The requirements of the statute are reciprocal--once defendant gives full notice of intent to claim a particular affirmative defense, the prosecution must furnish the defendant with a list of witnesses it intends to call in rebuttal to that defense.

State v. Madera (Mont. 1983), 670 P.2d 552, 40 St.Rep. 1558, supports this conclusion. There, the defendant did inform the State that he intended to use an alibi as a defense, but he did not inform the State of the nature or circumstances of the alibi. At trial, the prosecution presented witnesses to rebut the defense of alibi without furnishing their names to the defendant in advance. The defendant contended that this was improper rebuttal testimony. The Court held that because defendant did not provide the State with the substance of the alibi testimony, the State was not required to give notice of its rebuttal witnesses before it knew what defendant's alibi witnesses were going to testify to.

At least in Madera the State knew that defendant intended to claim the defense of alibi. Here the State had no notice that appellant intended to claim any affirmative defense. Under these circumstances the State may call

5

witnesses to rebut the affirmative defense offered at trial without furnishing defendant with a list of those rebuttal witnesses. It would be illogical to hold that the prosecution should have furnished appellant with a list of witnesses intended to rebut the affirmative defense offered when the prosecution did not even know about this defense until trial began.

A further reason for finding no error on this claim is that appellant was not surprised by the witnesses offered to rebut the defense asserted. The stated purpose of § 46-15-301(3), MCA, (1983) is for notice only and to prevent surprise. The witnesses objected to by appellant were listed by the prosecution in either the information or the notice of additional State witnesses, which appellant had access to some three months before trial began. He had ample opportunity to interview these witnesses and learn the substance of what they knew. We find that appellant had sufficient notice of the witnesses offered in rebuttal and had no reason to be surprised by their testimony. The use of these witnesses' testimony was not improper.

II

It appears that sometime before the trial began, the prosecutor met with his witnesses at the Thirsty Dog Saloon for the purpose of going over what they saw on the night of the shooting. Appellant was not notified of and did not appear at this meeting. He contends that this was a violation of his right to due process of law; however, he does not cite any Montana nor any federal authority to support this proposition.

6

One of the very few United States Supreme Court cases to consider this issue, albeit on a related topic, is Snyder v. Massachusetts (1934), 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674. In that case a view of the scene of the crime was had by the jury during trial, but the defendant was not allowed to be present although his attorney did attend the view. Defendant claimed that this denial was a violation of due process of law. The Court held:

> Nowhere in the decisions of this court is there a dictum, and still less a ruling, that the Fourteenth Amendment assures the privilege of presence when presence would be useless, or the benefit but a shadow . . . The underlying principle gains point and precision from the distinction everywhere drawn between proceedings at the trial and those before and after . . . So far as the Fourteenth Amendment is concerned, the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.

Snyder, 291 U.S. at 106-108. The Court found that there was no due process violation even though it was the jury that attended the view.

Thus, in order to find that appellant was deprived of due process of law, it must be determined whether appellant was denied a full and fair hearing by the prosecutor meeting with the witnesses at the scene of the shooting.

First, we note that after the meeting, appellant had full opportunity to interview these witnesses and could have conducted a view of his own if he so desired. Moreover, any inconsistencies in the witnesses' testimony or collusion among the witnesses could have been brought out at trial. Furthermore, there is no Montana or federal constitutional provision which grants to a defendant the right to attend a

7

pre-trial conference of the prosecution and State's witnesses.

Therefore, we hold that appellant was not denied a full and fair hearing by the pre-trial meeting of witnesses and the prosecutor. There is no evidence of any collusion or improper conduct at this meeting. The presence of appellant at this meeting would have had no reasonably substantial relation to his opportunity to defend against the charge asserted. Any prejudice alleged to have resulted is pure speculation. We cannot find a constitutional violation on a basis so feeble.

## III

Appellant contends next that he did not have the necessary state of mind required to commit the offense. He bases this contention on two grounds: (1) the gun discharged by accident, and (2) he was so intoxicated that he was not aware of his conduct and did not know what he was doing.

In order to be convicted of mitigated deliberate homicide the State must prove that a person has "purposely or knowingly" caused the death of another. Section 45-5-102, MCA, § 45-5-103, MCA. Knowingly is defined in § 45-2-101(33), MCA as:

> (33) Knowingly-- a person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware of his conduct or that the circumstance exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when he is aware that it is highly probable that such result will be caused by his conduct . . .

8

Thus, it was sufficient for the conviction if the State proved that appellant knowingly caused the death of Gregory. The State was not required to show that appellant acted purposely.

As to appellant's contention that the gun went off by accident and he was not aware the decedent would be killed by such accident, the evidence was overwhelming that the shooting was not an accident. All of the witnesses, except appellant and his wife, testified that appellant had the gun in both hands, arms extended, pointed toward Gregory immediately after the shot was fired. Only appellant testified that he dropped the gun on the bar which caused it to discharge. Thus, this contention is wholly without merit.

The assertion that appellant was too intoxicated to entertain the necessary criminal state of mind raises a more serious issue. The relevant statue is § 45-2-203, MCA, which provides:

> A person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition is involuntarily produced and deprives him of his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. An intoxicated or drugged condition may be taken into consideration in determining the existence of a mental state which is an element of the offense. (Emphasis added.)

There is no question that appellant's intoxicated condition was voluntarily produced. However, his intoxication may still be taken into consideration in determining whether he was aware of the high probability that Clyde Gregory would die as a result of his pulling the trigger of a gun pointed at Gregory's chest.

9

It is well settled that a jury may infer the requisite mental state from what a "defendant does and says and from all the facts and circumstances involved." State v. Pierce (1982), 199 Mont. 57, 63, 647 P.2d 847, 851; State v. Welling (1982), 199 Mont. 135, 647 P.2d 852; § 45-2-103, MCA. Appellant contends that he was not aware of what he was doing because of his intoxicated condition. The evidence points to the contrary.

Several witnesses testified that immediately after the shot was fired, they turned to see appellant holding the pistol with his arms extended pointed directly at Gregory. He then slowly put the gun back into its holster and walked out the back door. One witness even testified that he saw appellant blow smoke out of the end of the barrel before putting the gun back into its holster. Soon after the shooting, appellant told Sheriff Cragun: "I did it. Just lock me up for life." When asked by a friend of his why he shot Clyde, appellant replied: "Why not, I've lost everything else."

We find that there was substantial evidence from which the jury could conclude that appellant knowingly caused the death of Clyde Gregory. The jury's verdict declared that appellant was aware of the high probability that the decedent would be killed as a result of appellant pointing a pistol toward him and pulling the trigger. Where there is sufficient credible evidence to support the jury's findings, we will not make an independent determination of the effect of voluntary intoxication on a defendant's state of mind to commit the offense. State v. Hardy (1980), 185 Mont. 130, 604 P.2d 792. Furthermore, it appears that the jury did take appellant's intoxication into consideration since it found

10

him guilty of mitigated deliberate homicide rather than the greater offense of deliberate homicide.

## IV

Finally, appellant contends that there was insufficient evidence to support the conviction. He bases this contention largely on the fact that no one saw him pull the trigger and the State did not prove any motive for the killing. If these two circumstances were necessary in order to sustain a conviction, the burden of proof on the State would be almost insurmountable, and many obvious criminals would go free. The sole requirement necessary to support a conviction of deliberate homicide is that the State prove that a defendant purposely or knowingly caused the death of another.

The standard of review for questions involving sufficiency of the evidence to support a conviction is: (1) questions of fact must be determined solely by the jury, and (2) once a certain legal minimum of evidence has been presented, this Court will not make an independent determination of guilt and substitute its judgment for that of the jury. State v. Lemmon (Mont. 1984), 692 P.2d 455, 41 St.Rep. 2359; State v. Martinez (Mont. 1980), 613 P.2d 974, 37 St.Rep. 982. We find that the evidence presented at trial went far beyond the legal minimum required, and appellant's contention is without merit.

Affirmed.

Chief Justice

We concur:

_John Conway Harrison_

_Frank I. Morrison_

_L. C. Gulbrandson_

_Fred J. Weber_

_John C. Sheehy_

_William E. Hunt, Sr._
Justices