No. 87-520

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

STATE OF MONTANA,

       Plaintiff and Respondent,

  -vs-

RONALD WILLIAM McKIMMIE,

       Defendant and Appellant.

---

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    John Keith, Great Falls, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        John Paulson, Asst. Atty. General, Helena
        Patrick L. Paul, County Attorney, Great Falls, Montana
        Steve Hagerman, Deputy County Attorney, Great Falls

---

Submitted on Briefs: April 28, 1988

Decided: June 7, 1988

Filed: JUN 7 1988

*Ethel M. Harrison*

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Defendant McKimmie appeals his September 23, 1987, bench convictions in the Eighth Judicial District Court, Cascade County, for deliberate homicide, burglary, theft and evidence tampering. McKimmie was sentenced to one hundred years in the Montana State Prison for deliberate homicide, ten years for burglary, ten years for tampering with physical evidence, and ten years for use of a dangerous weapon, with the sentences to run consecutively. McKimmie was also sentenced to six months in the Cascade County jail for misdemeanor theft, to run concurrently. McKimmie was designated a nondangerous offender. We affirm the convictions.

McKimmie raises two issues for our review:

1. Does sufficient evidence support McKimmie's conviction of deliberate homicide?

2. Does sufficient evidence support McKimmie's conviction of burglary, theft and tampering with physical evidence?

At 2:07 a.m. on June 6, 1987, the police dispatcher in Great Falls received a call from a woman asking for help. Upon questioning, she stated that her husband had shot her with a rifle. She also stated that her husband had taken the rifle and fled in a 1976 Ford Pinto.

The dispatcher stayed on the line for several minutes until a police officer arrived at the victim's apartment. The officer found the victim, Valarie McKimmie, lying on the couch with a telephone in her hand. She had a two-inch hole in her chest. The officer hung up the phone and immediately tried to stop the bleeding by applying direct pressure to the wound. A second officer soon arrived and assisted until the ambulance arrived. The second officer asked Valarie who had shot her. She replied: "My husband." The officer then asked for her husband's name, and she replied: "Ronald."

2

Valarie was transported to Deaconess Medical Center in Great Falls. The police were unable to get any further statements from her. Valarie died as a result of the gunshot wound on June 11, 1987.

McKimmie was subsequently charged with deliberate homicide, burglary, theft and evidence tampering. Trial was held on September 22, 1987. Prior to presenting his case-in-chief, McKimmie stipulated to the following facts: McKimmie shot Valarie with a rifle belonging to Eugene Ameline. Following the shooting, McKimmie left the rifle alongside Interstate 15 south of Great Falls. McKimmie then drove to Salt Lake City, where he was arrested for DUI by a Utah Highway Patrol officer in the afternoon of June 6, 1987. McKimmie told the arresting officer that he had shot his wife in Montana.

Issue 1. Deliberate Homicide

The District Court convicted McKimmie of deliberate homicide as defined in § 45-5-102(1)(a), MCA (1985): "Criminal homicide constitutes deliberate homicide if: (a) it is committed purposely or knowingly." At sentencing, the District Court told McKimmie: "[Y]ou laid in wait for her until she came home, and you deliberately shot her. She was still holding her purse, and one of the shells penetrated the metal clasp on the purse and went into her chest, which indicates to me that this is deliberate homicide of the worst type."

However, McKimmie contends that the shooting was accidental and that the State did not prove he acted purposely or knowingly in causing Valarie's death.

Our standard of review on sufficiency of evidence is whether the evidence, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable

doubt. State v. Kutnyak (Mont. 1984), 685 P.2d 901, 910, 41 St.Rep. 1277, 1289. If events are capable of different interpretations, the trier of fact shall determine which is the most reasonable. State v. Matson (Mont. 1987), 736 P.2d 971, 973, 44 St.Rep. 874, 875, citing State v. Atlas (Mont. 1986), 728 P.2d 421, 423, 43 St.Rep. 2042, 2044.

In the instant case, the State was required to show that McKimmie purposely or knowingly caused the death of Valarie. "Knowingly" is defined in § 45-2-101(33), MCA:

> A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware of his conduct or that the circumstance exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when he is aware that it is highly probable that such result will be caused by his conduct. [Emphasis added.]

This "knowing" element was manifest in McKimmie's actions. McKimmie admitted that he had broken into Eugene Ameline's apartment earlier in the evening. McKimmie removed the weapon used to kill Valarie, which was a 7.65 Mauser rifle, and two sizes of ammunition from the apartment. He left everything else in place.

McKimmie testified that he then tried to commit suicide with the rifle around 10:30 p.m. on June 5. As he was positioning himself on the couch, he claimed that the rifle slipped off the coffee table and discharged into the refrigerator. But the District Court stated: "You said that you attempted to commit suicide, but it's the Court's belief that you fired that shot that hit the refrigerator, about a foot from the floor, just to see if it worked, see if you had the right ammunition in the gun."

4

McKimmie testified that he reloaded the rifle around 12:30 a.m. According to McKimmie, when Valarie came home at about 1:30 a.m., McKimmie talked to her about his attempted suicide. While he was holding the rifle across his lap, Valarie sat on an adjacent couch. McKimmie stated that he fell back, and the gun discharged. McKimmie testified: "I looked at her and thought, my God, she's dead." A firearms expert testified that the rifle was operating normally and that Valarie was shot from a distance of less than four feet.

We find that McKimmie's actions prior to, during and after the shooting demonstrate an awareness of his conduct and its probable results. However, McKimmie next asserts that he is an alcoholic and was not aware of what he was doing because he he drank alcohol from noon on June 5, 1987, until his arrest on June 6, 1987, for DUI. We note § 45-2-203, MCA (1985), which states:

> A person who is in an intoxicated or drugged condition is <u>criminally</u> <u>responsible</u> for his conduct unless such condition is <u>involuntarily</u> <u>produced</u> and deprives him of his capacity to appreciate the criminality of his conduct . . . [Emphasis added.]

By his own admission·on the witness stand, McKimmie had voluntarily consumed alcohol since noon. Where sufficient credible evidence supports the findings, the question of the relationship of voluntary intoxication to specific intent will not be reconsidered on appeal. State v. Hardy (1980), 185 Mont. 130, 135, 604 P.2d 792, 795-796. In light of the supporting evidence, we will not make an independent determination of the effect of voluntary intoxication on the defendant's state of mind. State v. Sage (Mont. 1986), 717 P.2d 1096, 1101, 43 St.Rep. 738, 744.

5

Finally, McKimmie admits that his flight after the shooting might infer knowledge or purpose, but he asserts that mere flight does not establish the requisite mental state. We note that, standing alone, such flight does not establish the requisite mental state. However, flight by a defendant may be considered by the trier of fact as a circumstance tending to prove consciousness of guilt. State v. Charlo (Mont. 1987), 735 P.2d 278, 282, 44 St.Rep. 597, 603. As trier of fact, the District Court determined the evidentiary weight and significance of McKimmie's flight from the crime scene. State v. Twoteeth (Mont. 1985), 711 P.2d 789, 794, 42 St.Rep. 1873, 1879.

McKimmie fled the crime scene, he disposed of the Mauser rifle, and he subsequently admitted shooting Valarie. The record contains ample evidence that McKimmie knowingly caused the death of Valarie. If the act which causes the death is done purposely or knowingly, deliberate homicide is committed even if death is not the intended result. State v. Sigler (Mont. 1984), 688 P.2d 749, 758, 41 St.Rep. 1039, 1047. McKimmie's claim is without merit. We hold that the evidence clearly supports McKimmie's conviction for deliberate homicide.

Issue 2. Burglary, theft and tampering

a. Burglary

McKimmie was convicted of burglary as defined in § 45-6-204(1), MCA:

> A person commits the offense of burglary if he knowingly enters or remains unlawfully in an occupied structure with the purpose to commit an offense therein. [Emphasis added.]

McKimmie contends that he entered Ameline's apartment in his capacity as apartment manager. Ameline lived two

apartments away from McKimmie. McKimmie asserts that he was in the process of evicting Ameline for nonpayment of rent. McKimmie argues that he merely inventoried Ameline's property for storage and removed Ameline's rifle as a "protective measure." He concludes that no evidence shows a purpose to commit an offense.

We disagree. McKimmie's "apartment manager" defense to burglary is inadequate. McKimmie acted far beyond his statutory authority as agent of the landlord. First, his method of entry was destructive. The police investigating officer noted that the main window on Ameline's apartment door had been broken out and the wire mesh behind the window had been damaged. Second, McKimmie entered Ameline's apartment at night. Third, McKimmie entered without the tenant's consent. Fourth, he entered without notice. McKimmie plainly violated a landlord's right of access under § 70-24-312(3), MCA: ". . . the landlord shall give the tenant at least 24 hours' notice of his intent to enter and may enter only at reasonable times." (Emphasis added.)

McKimmie's unlawful entry was also done knowingly. McKimmie testified in detail about where he had been and what he had done in the hours prior to the time he entered Ameline's apartment. McKimmie precisely described his entry: "I had keys for all of the units except his. So I had to use a small hammer on the window and I was careful to try to keep the damage as minimal as possible." McKimmie then recalled in detail the events which occurred after his entry into the apartment. McKimmie's testimony falls squarely within the definition of "knowingly" in § 45-2-101(33), MCA.

The third element of burglary--"purpose to commit an offense"--is discussed below, and shows that theft was the object and purpose of McKimmie's entry into the apartment. We hold that McKimmie's conviction of burglary is amply

7

supported by the theft, the physical evidence of forced entry and McKimmie's admissions.

b. Theft

Theft is defined in § 45-6-301(1), MCA:

> A person commits the offense of theft when he purposely or knowingly obtains or exerts unauthorized control over property of the owner and: (1) has the purpose of depriving the owner of the property. [Emphasis added.]

The State proved each element of theft. First, McKimmie admitted that he removed the rifle and ammunition from Ameline's apartment. He did so without Ameline's knowledge or consent. McKimmie then fired and expended two shells. McKimmie's actions thus constitute a knowing exertion of unauthorized control.

Second, McKimmie's conduct deprived Ameline of his rifle. "Deprive" means to withhold property of another and "dispose of the property and use or deal with the property so as to make it unlikely that the owner will recover it." Section 45-2-101(19)(d), MCA. After he shot his wife, McKimmie took Ameline's rifle and fled from the scene. McKimmie testified that he stopped his car on Interstate 15 near Gore Hill. He stated: "I grabbed the rifle and tossed it over the roof of the car." Such abandonment plainly deprived Ameline the use of his property. Only by chance, the rifle was recovered ten days later. We hold that the physical evidence and McKimmie's own admissions fully support his conviction for theft.

c. Tampering

The Mauser rifle and the victim's purse were found by highway workers on June 16, 1987. The purse had

8

identification in it showing that it belonged to Valarie. Ameline identified the rifle as his. The rifle had already begun to rust.

Tampering is defined in § 45-7-207(1), MCA:

> A person commits the offense of tampering with or fabricating physical evidence if, believing that an official proceeding or <u>investigation</u> is <u>pending</u> or about to be instituted, he: (a) alters, destroys, <u>conceals</u> or <u>removes</u> any record, document, or thing with purpose to <u>impair</u> its verity or <u>availability</u> in such proceeding or investigation. [Emphasis added.]

On the witness stand, McKimmie admitted that he discarded the rifle and purse in the ditch. However, McKimmie contends that he was too distraught to have formed the requisite mental state or belief that an official investigation was pending.

The District Court reviewed the evidence, observed McKimmie's testimony and assessed his veracity. A trier of fact may infer the requisite mental state from a defendant's conduct and statements. State v. Pierce (1982), 199 Mont. 57, 63, 647 P.2d 847, 851. McKimmie removed and concealed the evidence. He not only impaired its availability, but also caused its condition to change. Viewed in a light most favorable to the State, the evidence was reasonably interpreted and adequately supports McKimmie's conviction of tampering with evidence.

We affirm the four convictions.

J. A. Turnage

Chief Justice

We concur:

_John L. Sheehy_

_John Conway Harrison_

_L. C. Gulbrandson_

_R. C. McDonough_
Justices