No. 99-047

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 86

STATE OF MONTANA,

Plaintiff and Respondent,

v.

RICHARD ALFRED WEITZEL,

Defendant and Appellant.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Thomas S. Winsor, Michael Scott Winsor, Winsor Law Firm, Helena, Montana

For Respondent:

Joseph P. Mazurek, Montana Attorney General, John Paulson, Assistant Montana Attorney General, Helena, Montana; Mike McGrath, Lewis and Clark County Attorney, Helena, Montana

Submitted on Briefs: October 14, 1999
Decided: April 6, 2000

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1 Richard Alfred Weitzel (Weitzel) appeals from a jury verdict finding him guilty of felony assault and the corresponding sentence imposed by the First Judicial District Court, Lewis and Clark County. We affirm the verdict but reverse the District Court's sentence enhancement for use of a weapon during the commission of an offense.

¶2 Weitzel raises three issues on appeal:

¶3 (1) Was there sufficient evidence to sustain the conviction for felony assault?

¶4 (2) Did the District Court abuse its discretion by allowing rebuttal evidence showing that Weitzel had pawned a handgun in July of 1996?

¶5 (3) Should this case be remanded to the District Court for resentencing in light of the recent decision in State v. Guillaume, 1999 MT 29, 293 Mont. 224, 975 P.2d 312?

Factual and Procedural Background

¶6 On April 10, 1998, the State of Montana (the State) filed an Information charging Weitzel with two counts of felony assault and one count of felony conspiracy to sell dangerous drugs. Count I alleged that Weitzel had pointed a handgun at the head of Jeffrey Brewer (Brewer), causing him reasonable apprehension of serious bodily injury. Count II alleged that Weitzel had pointed a handgun at Veronica Jenkins (Jenkins), causing her reasonable apprehension of serious bodily injury. And Count III alleged that Weitzel had agreed with Cynthia Thilmony (Thilmony) to the sale of marijuana and provided her with $800 cash for that purpose. Weitzel pleaded not guilty to the charges.

¶7 The events giving rise to the charges against Weitzel occurred on March 12, 1998, in Helena, Montana. At that time, Weitzel was a self-employed flooring contractor. He lived in a house on Choteau Street and was engaged to Judy Weidner (Weidner). Weidner's nineteen-year-old niece, Thilmony, lived nearby in an apartment on Broadwater Circle. On March 12, Thilmony called Weitzel at his house and asked if she could come over and use his washing machine to do some laundry. Weitzel agreed and Thilmony arrived at his house around noon. During this visit, according to Thilmony, Weitzel asked her if she could procure a half-pound of marijuana for him to purchase. Thilmony agreed to make some inquiries on behalf of Weitzel.

¶8 Thilmony then called her boyfriend, Brewer, who in turn called two friends, Mike Zandhuisen (Zandhuisen) and Jeremy Younkin (Younkin). Younkin stated that he could obtain a half-pound of marijuana for $800; Brewer related this information to Thilmony, who informed Weitzel. Weitzel allegedly gave Thilmony $800, and she turned the money over to Brewer to make the purchase of marijuana. Brewer then gave Younkin $700 cash, keeping $100 for himself. However, after obtaining the $700 from Brewer, Younkin and Zandhuisen decided to steal the money from Brewer and split it between themselves.

¶9 At about 6:15 p.m., Weitzel allegedly first learned that $800 cash was missing from his wallet, which had been sitting on a desk in his home office throughout the day, and he called Weidner to inform her of the fact. Weitzel and Weidner assumed that the culprit was Thilmony. Sometime after 9:00 p.m., Brewer went to Jenkins' apartment on Broadwater Circle and called Zandhuisen, who then informed Brewer that he and Younkin did not have the money or the drugs because the $700 had been "ripped off" by their supplier. Subsequently, Thilmony went to her apartment and was confronted by Weitzel about the missing cash. According to Weitzel, Thilmony admitted to stealing the money and giving it to Brewer to purchase marijuana.

¶10 Weitzel then decided to find and confront Brewer. Thilmony drove Weitzel to Jenkins' apartment. According to Thilmony, Weitzel had a handgun in a shoulder holster under his jacket, and he informed Thilmony that someone's "going to die tonight." Upon arriving, Weitzel got out of the car, walked into Jenkins' apartment, and pinned Brewer's head against the wall with a dark object, demanding his money back and shouting obscenities. Brewer, Zandhuisen, Scott Smith (Smith), and Rob Hollow (Hollow) subsequently escaped on foot, while Jenkins remained at her apartment. Weitzel left Jenkins' apartment in Thilmony's car, but asked her to drop him off at Weidner's apartment. About fifteen

minutes thereafter, Weitzel showed up at Thilmony's apartment on foot, carrying a cell phone instead of a gun.

¶11 At 10:08 p.m., the Helena Police Department received a call from Thilmony's mother, who stated that she believed Thilmony was in danger and expressed concern that there might be a gun involved. Upon responding to the call and arriving at Thilmony's apartment on Broadwater Circle, the police encountered Weitzel at the front door. Weitzel was immediately patted down but the police found no firearm or holster on his person. The police advised Weitzel of the concern that their might be a gun involved, to which Weitzel responded that the confusion may have been caused by his cell phone. When questioned, Thilmony told the police that $800 had been stolen from her and that Weitzel was helping her to get the money back. Weitzel did not contradict Thilmony's story at that time.

¶12 A few days after this incident, Thilmony told the police about the alleged drug deal and the events leading up to the assault by Weitzel. Weitzel eventually told the police that Thilmony had taken the $800 from his apartment, and that he had gone with Thilmony to Jenkins' apartment in an attempt to recover the money. Weitzel denied that he had used a gun to threaten Brewer, instead claiming that he had held his cell phone against Brewer's face during the confrontation at Jenkins' apartment.

¶13 The other witnesses to the incident recalled varying, and often contradictory, details about the assault. Although Thilmony did not initially represent to police that a gun had been involved in the incident, she subsequently testified that Weitzel had been holding a handgun when he entered Jenkins' apartment on the night in question. Zandhuisen claimed that after the incident with Weitzel, Brewer had injuries consistent with having been hit in the head with a gun. However, Brewer denied the same at trial. Smith and Hollow also testified, consistent with Zandhuisen, that Weitzel had wielded a gun against Brewer on the night of March 12. Immediately following the assault incident, Jenkins had excitedly told a neighbor that Weitzel had come into her apartment and thrown Brewer against the wall, but at that time she never mentioned that Weitzel had a gun. However, Jenkins subsequently stated to police that Weitzel had threatened her with a gun. Shortly after the incident, Jenkins mysteriously moved out of Montana.

¶14 All of the State's key witnesses (excluding the police) were friends prior to the incident. The authorities did not search Weitzel's home for any guns, nor did they search Weidner's apartment for any handguns belonging to Weitzel. At trial, Weidner testified that she did not believe that Weitzel owned a handgun. Weitzel's criminal record consisted

of only two misdemeanors, neither of which involved drugs or violence. Thilmony was charged with conspiracy but pleaded to theft in return for her testifying against Weitzel. Zandhuisen was also charged with conspiracy but, notwithstanding the absence of an agreement to testify against Weitzel, the charges against him were dismissed. Brewer was not charged in connection with this case.

¶15 Prior to trial, Weitzel gave notice that he would present evidence of his good character and assert the defense of justifiable use of force. At trial, Weitzel testified that he had last purchased a handgun in March or April of 1996 and had given it to his brother at that time. On cross-examination, Weitzel clarified that he had purchased a .9mm Baretta as a belated birthday present for his brother in 1996, and further denied having any handguns himself. Weitzel's brother testified at trial about the gift of the pistol in 1996 and also testified that Weitzel did not have any handguns.

¶16 At the close of Weitzel's case-in-chief, the State moved to present rebuttal testimony to the effect that Weitzel had pawned and then subsequently retrieved a handgun from a pawnshop in 1996. That handgun was a .45 caliber Llama similar in appearance to the one described by the State's witnesses. The State explained that it had not known prior to trial what the testimony of Weitzel and his brother would be concerning Weitzel's ownership of handguns, and offered the rebuttal evidence to impeach Weitzel's credibility. The District Court overruled Weitzel's objections and permitted the State to present the rebuttal evidence in the form of pawn shop records. The court also allowed the State to show the jury an actual .45 caliber Llama to demonstrate the type of firearm that Weitzel had owned in 1996.

¶17 On August 26, 1998, the jury returned its verdict, unanimously finding Weitzel guilty of felony assault under Count I, and not guilty of conspiracy to commit the criminal sale of dangerous drugs under Count III. The jury was unable to reach a verdict as to the felony assault charge alleged in Count II. Following the verdict, Weitzel filed a "Motion for Judgment Notwithstanding the Verdict," which was denied by the District Court. On October 23, 1998, the District Court sentenced Weitzel to the Montana State Prison for a term of four years for Count I, felony assault, with all of the four-year term suspended upon certain conditions. However, the District Court further sentenced Weitzel to a mandatory term of two years at the Montana State Prison, pursuant to § 46-18-221, MCA, for using a weapon during the commission of the felony assault.

## Discussion

¶18 (1) Was there sufficient evidence to sustain the conviction for felony assault?

¶19 At the conclusion of the State's case, the District Court denied Weitzel's motion to dismiss on the basis of insufficient evidence. A motion to dismiss for insufficient evidence should be granted by the district court "'only where there is no evidence upon which a trier of fact could base a verdict.'" State v. Miller (1988), 231 Mont. 497, 509, 757 P.2d 1275, 1282-83 (quoting State v. Matson (1987), 227 Mont. 36, 42, 736 P.2d 971, 974). This Court reviews the denial of such a motion in the same manner that we review the sufficiency of evidence supporting a jury verdict in a criminal case. That is, we review the record to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Berger, 1998 MT 170, ¶ 25, 964 P.2d 725, ¶ 25, 290 Mont. 78, ¶ 25. It is within the sound discretion of the trial court to determine whether to dismiss an action at the close of the State's case for insufficient evidence, and we will not disturb such a ruling in the absence of an abuse of discretion. State v. Miller, 1998 MT 177, ¶ 21, 290 Mont. 97, ¶ 21, 966 P.2d 721, ¶ 21 (citing § 46-16-403, MCA; Miller, 231 Mont. at 509, 757 P.2d at 1282).

¶20 Weitzel, while acknowledging that witness credibility and weight of the evidence is the province of the jury, contends that there was insufficient evidence to convict him of felony assault because the testimony of all of the State's witnesses, with the exception of the police, was lacking in credibility. Weitzel points to "numerous inconsistencies" in the stories of the State's witnesses, such as the contradictory "time-line" put forward by those witnesses as to the events of March 12, and asserts that these conflicts in the testimony render the underlying felony assault conviction invalid. However, Weitzel's contentions are unavailing and need not be repeated in detail here. " 'It is within the province of the finder of fact to weigh the evidence presented and determine the credibility of the witness [es]; in the event of conflicting evidence on factual issues, the trier of fact determines which will prevail.' " State v. Johnson, 1998 MT 289, ¶ 41, 291 Mont. 501, ¶ 41, 969 P.2d 925, ¶ 41 (quoting State v. Sattler, 1998 MT 57, ¶ 55, 288 Mont. 79, ¶ 55, 956 P.2d 54, ¶ 55).

¶21 Weitzel was convicted of felony assault under § 45-5-202, MCA (1997), pursuant to which the State was required to prove beyond a reasonable doubt that Weitzel caused "reasonable apprehension of serious bodily injury in another by use of a weapon." Section 45-5-202(2)(b), MCA (1997). As Weitzel recognizes, there was testimony from five separate witnesses for the State to the effect that Weitzel assaulted Brewer with a handgun

in Jenkins' apartment on the evening of March 12, 1998. Our function on appellate review is limited to determining whether the jury verdict is supported by sufficient evidence, not whether there was evidence which could support a different verdict. See Johnson, ¶ 41 (quoting Sattler, ¶ 60). Although the evidence could support a different verdict in this case, it is not this Court's role to impose our judgment for that of the trier of fact. That the jury chose to believe the version of the facts put forward by the State's witnesses, rather than Weitzel's depiction of the events that occurred on March 12, was within its prerogative as the trier of fact. Furthermore, as the State points out, the mere fact that a defendant's testimony conflicts with that of other witnesses does not, by itself, render the evidence insufficient to support the conviction. See Miller, ¶ 25 (quoting State v. Bower (1992), 254 Mont. 1, 8, 833 P.2d 1106, 1111).

¶22 The testimony of the five witnesses presented a more than sufficient basis from which the jury could determine that Weitzel had used a gun rather than a cell phone to commit the assault on Brewer. When viewing the evidence in a light most favorable to the State, we determine that any rational trier of fact could have found the essential elements of felony assault beyond a reasonable doubt. We hold that there was sufficient evidence to support Weitzel's conviction for felony assault. We further hold, therefore, that the District Court did not abuse its discretion in denying Weitzel's motion to dismiss for insufficient evidence.

¶23 (2) Did the District Court abuse its discretion by allowing rebuttal evidence showing that Weitzel had pawned a handgun in July of 1996?

¶24 We review a district court's evidentiary rulings for abuse of discretion. State v. Lantis, 1998 MT 172, ¶ 52, 289 Mont. 480, ¶ 52, 962 P.2d 1169, ¶ 52. The decision to admit rebuttal evidence is a matter that rests largely within the discretion of the trial court, and we will not overturn such a determination unless an abuse of discretion is shown. Morrison v. City of Butte (1967), 150 Mont. 106, 115, 431 P.2d 79, 83-84.

¶25 Before trial, Weitzel provided notice to the State that he would present the defense of justifiable use of force and that he would present evidence of his good character. In his trial testimony, Weitzel claimed that he does not presently own a handgun or a shoulder holster. However, Weitzel went on to describe how he had purchased a handgun in March or April of 1996 as a belated birthday present for his brother. Similarly, Weitzel's brother testified about the gift of a pistol from Weitzel in 1996 and also corroborated that Weitzel does not presently own or possess any handguns. Over Weitzel's objections, the District

Court permitted the State to introduce pawn shop records in rebuttal showing that Weitzel had pawned a handgun on July 2, 1996, and then retrieved it on July 13, 1996. The court ruled that the rebuttal evidence was "very relevant" to the question of Weitzel's credibility.

¶26 On appeal, Weitzel contends that the District Court abused its discretion in permitting the State to introduce the pawn shop records in rebuttal because there was "no basis" in the record for the introduction of that evidence. Weitzel also argues that the court abused its discretion in admitting the evidence because the prosecution failed to discharge its statutory duty to disclose the pawn shop records in advance of trial as required by § 46-15-322, MCA, and Rule 404(b), M.R.Evid. Lastly, Weitzel claims that the admission of the rebuttal evidence was improper pursuant to Rule 608, M.R.Evid. We address each of Weitzel's contentions in turn.

¶27 Weitzel's argument that there was "no basis" in the record for the introduction of the rebuttal evidence is without merit. Weitzel testified at trial as follows:

Q: Do you own . . . a handgun?

A: No, I do not.

Q: Do you own a shoulder holster?

A: No, I do not.

. . . .

Q: Have you ever purchased a handgun?

A: Yes.

Q: Where is that handgun?

A: Should be at my brother's house.

Q: How long ago did you purchase that handgun?

A: March or April of '96.

Q: When did you give it to your brother Mark?

A: March or April of '96.

Q: Has that firearm been in your possession at any time since March or

April of 1996?

A: No.

- ¶Weitzel then testified, on cross-examination, as follows:

Q: And you don't have any handguns?

A: No, sir, I do not.

Q: I think you testified that you bought one once and gave it to your brother?

A: Yes, I did.

Q: It was a birthday or something?

A: Yes, I did.

Q: You said it was in . . . March of '96?

A: I think it was March or April of '96.

When questioned, Weitzel's brother corroborated that Weitzel had purchased a .9mm handgun as a belated birthday present for him in March or April of 1996. When asked whether Weitzel owns any handguns, Weitzel's brother responded in the negative.

¶29 Weitzel takes the position that since he did not testify that he had never owned a handgun, it was improper for the State to introduce rebuttal testimony to the effect that Weitzel had been engaged in a pawn shop transaction involving a handgun in mid-1996. However, we agree with the State that Weitzel "opened the door" to the rebuttal evidence by choosing to testify as to his gun ownership, including the purchase of a handgun for his brother in early-1996. More importantly, as the State suggests, the testimony of Weitzel

and his brother left the jury with the misleading impression that Weitzel had purchased only one handgun in the past as a gift for his brother. The plain implication of the testimony presented was that Weitzel had last purchased a handgun in early-1996 and had not owned any handguns since that time. Thus, the State's pawn shop evidence was properly admitted to rebut that misimpression, and to thereby impeach Weitzel's credibility, by showing that Weitzel had pawned and then retrieved a handgun shortly after the alleged gift and less than two years before the assault incident.

¶30 Regarding the alleged failure of the State to give notice of the rebuttal testimony, we also conclude that Weitzel's position must fail. Section 46-15-322, MCA, provides in relevant part:

> **Disclosure by prosecution.** . . .
>
> . . . .
>
> (6) The prosecutor shall furnish to the defendant no later than 5 days before trial or at a later time as the court may for good cause permit, together with their statements, a list of the names and addresses of all persons whom the prosecutor intends to call as rebuttal witnesses to evidence of good character or the defenses of alibi, compulsion, entrapment, justifiable use of force, or mistaken identity or the defense that the defendant did not have a particular state of mind that is an element of the offense charged.

Section 46-15-322(6), MCA.

¶31 As Weitzel indicates, the duty of pre-trial disclosure by the prosecution under § 46-15-322, MCA, is broader than that required by Brady v. Maryland (1963), 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215. Indeed, the statutory provisions mandate the disclosure of all material and information within the prosecutor's possession and control, regardless of whether inculpatory or exculpatory in nature. See State v. Licht (1994), 266 Mont. 123, 129, 879 P.2d 670, 673-74. Weitzel further points out that the prosecution's obligation of disclosure extends to material and information that is in the possession or control of any member of the prosecutor's staff or any other persons who have participated in the investigation or evaluation of the case. See § 46-15-322(4), MCA.

¶32 Here, the record shows that an investigating officer first learned of Weitzel's 1996

pawn shop transaction approximately a month prior to trial and that the prosecutor himself knew of the existence of the pawn shop records about two weeks before trial. Nevertheless, that does not mean that the State was under an obligation to disclose this information before trial. As we have indicated in the past, the prosecution is under no statutory duty to provide pre-trial notice of a witness called to impeach the credibility of a defense witness. See State v. Hildreth (1994), 267 Mont. 423, 430-31, 884 P.2d 771, 775-76.

¶33 In Hildreth, the defendant raised the defense of alibi at trial. In rebuttal, the State called three witnesses. The defendant in Hildreth then challenged those witnesses on appeal, contending that the witnesses had been called to rebut his alibi defense but that the State had failed to discharge its statutory duty to provide written, pre-trial disclosure of these witnesses as required by § 46-15-322(6), MCA. Hildreth, 267 Mont. at 430, 884 P.2d at 775-76. This Court, noting that two of the State's three "rebuttal witnesses" were called to impeach the testimony of defense witnesses rather than rebut the alibi defense itself, impliedly held that the prosecution was under no duty pursuant to § 46-15-322(6), MCA, to provide notice of impeachment witnesses prior to trial. See Hildreth, 267 Mont. at 430, 884 P.2d at 775-76. Regarding the third witness, we observed that the State had, without prior notice, attempted to solicit testimony from the witness to rebut the defendant's alibi defense in circumvention of the statutory "notice requirements," but we held, nonetheless, that the admission of the rebuttal testimony was harmless because it had not prejudiced the defendant. Hildreth, 267 Mont. at 430-31, 884 P.2d at 776. Hildreth clearly implies that the prosecution is under no statutory duty to provide pre-trial notice of witnesses that may be utilized solely to impeach the credibility of defense witnesses.

¶34 Furthermore, even assuming for the sake of argument that the pawn shop records could be characterized as evidence falling within the notice requirements of § 46-15-322 (6), MCA, it is evident that the State provided notice to Weitzel at the "earliest opportunity." See State v. Madera (1983), 206 Mont. 140, 147-48, 670 P.2d 552, 556; cf. State v. Sage (1986), 221 Mont. 192, 196-97, 717 P.2d 1096, 1098-99 (holding that the prosecution's statutory duty of providing notice of rebuttal witnesses does not arise until the defense provides notice of its intent to claim a particular affirmative defense). Weitzel's pre-trial notice did not provide the State with any details about the "substance of the testimony" to be presented at trial. See Madera, 206 Mont. at 148, 670 P.2d at 556. There was no indication that, in presenting evidence of good character or the defense of justifiable use of force, Weitzel would choose to testify as to his handgun ownership. Therefore, the State had no reason to know, in advance of trial, that Weitzel would defend

against the charges by claiming that he did not own or possess any handguns. It would be "illogical" to hold that the prosecution was under a duty to disclose a list of witnesses intended to rebut a particular defense where the prosecution "did not even know about this defense until trial began." Cf. Sage, 221 Mont. at 197, 717 P.2d at 1099.

¶35 We agree with the State that it was therefore entitled to rebut the testimony of Weitzel and his brother with relevant evidence to the contrary. Indeed, the pawn shop rebuttal evidence did not become relevant until Weitzel and his brother testified at trial as to Weitzel's gun ownership. Although Weitzel questions the relevance of the rebuttable evidence, we agree with the District Court that the pawn shop records were highly relevant to the question of Weitzel's credibility. See State v. Arlington (1994), 265 Mont. 127, 141, 875 P.2d 307, 315 (quoting Rule 401, M.R.Evid.) (recognizing that relevant evidence may encompass " 'evidence bearing upon the credibility of a witness' ").

¶36 It is clear that Weitzel's defense strategy was to suggest to the jury that he did not own or possess any handguns and had last purchased a handgun as a gift for his brother in early-1996. Weitzel made a tactical decision to open the door to the issue of gun ownership, and by choosing to testify to the purchase of the handgun in 1996 without disclosing other gun transactions in which he had been involved, Weitzel assumed the risk that his defense strategy would backfire. In short, "[h]e took a chance and his strategy failed. He was caught in a trap of his own making, and no . . . statutory impurity arose thereby." Madera, 206 Mont. at 148, 670 P.2d at 556.

¶37 Nor do the pawn shop records constitute "other acts" evidence falling under Rule 404 (b), M.R.Evid., and the notice requirements of the so-called "Modified Just Rule." See State v. Just (1979), 184 Mont. 262, 602 P.2d 957, as modified by State v. Matt (1991), 249 Mont. 136, 814 P.2d 52. The pawn shop evidence did not show other crimes, wrongs, or acts, and was introduced by the State for the sole purpose of challenging Weitzel's credibility. Moreover, as the State correctly argues, where a defendant has " 'opened the door' " to the question of his or her character, as Weitzel did here, the State is not precluded from presenting rebuttal evidence pursuant to Rule 404(a)(1), M.R.Evid., without adhering to the notice requirements of the Modified Just Rule. See Arlington, 265 Mont. at 156-57, 875 P.2d at 324-25; see also State v. Carter (1997), 285 Mont. 449, 458, 948 P.2d 1173, 1178; State v. McQuistron (1996), 277 Mont. 397, 403, 922 P.2d 519, 523; State v. Newman (1990), 242 Mont. 315, 320, 790 P.2d 971, 974. Weitzel, by presenting testimony about his history of handgun ownership as a character trait, opened the door to the State's rebuttal evidence showing that Weitzel presented a partial, and thus misleading,

history of his gun ownership.

¶38 Lastly, we decline to address Weitzel's argument that the admission of the pawn shop evidence violated Rule 608, M.R.Evid. The State points out that Weitzel failed at trial to raise Rule 608, M.R.Evid., as a basis for exclusion of the evidence. As a general rule, this Court will consider for review only those issues raised before the trial court; we will not review an issue where the defendant has failed to present the issue to the district court. See State v. Herrera, 1998 MT 173, ¶¶ 17-18, 289 Mont. 499, ¶¶ 17-18, 962 P.2d 1180, ¶¶ 17-18; §§ 46-20-104 and 46-20-701, MCA. A district court "'will not be put in error where it was not accorded an opportunity to correct itself.'" State v. Long (1986), 223 Mont. 502, 506, 726 P.2d 1364, 1366 (quoting State v. Patton (1979), 183 Mont. 417, 422, 600 P.2d 194, 197). None of the circumstances outlined in § 46-20-701(2), MCA, exist here, nor do either of the parties urge this Court to reach this issue under common law plain error review. Therefore, Weitzel's failure to raise Rule 608, M.R.Evid., before the District Court constitutes a waiver of that claim on appeal.

¶39 Given the nature and circumstances of Weitzel's testimony in this case, we hold that the District Court did not abuse its discretion by permitting the State to introduce the pawn shop evidence to impeach Weitzel's credibility.

¶40 (3) Should this case be remanded to the District Court for resentencing in light of the recent decision in State v. Guillaume, 1999 MT 29, 293 Mont. 224, 975 P.2d 312?

¶41 In Guillaume, this Court confronted the question of whether the application of Montana's weapon enhancement statute, § 46-18-221, MCA (1997), to a conviction for felony assault pursuant to § 45-5-202(2)(b), MCA (1997), violated the double jeopardy provision of Article II, Section 25 of the Montana Constitution. Guillaume, ¶ 2. Reasoning that the Montana Constitution "affords greater protection against multiple punishments for the same offense" than does the United States Constitution, this Court held that "application of the weapon enhancement statute to felony convictions where the underlying offense requires proof of use of a weapon violates the double jeopardy provision of Article II, Section 25 of the Montana Constitution." Guillaume, ¶ 16.

¶42 Notwithstanding the absence of a double jeopardy objection below, Weitzel asks this Court to apply Guillaume on appeal and conclude that the District Court's sentence enhancement on the basis of § 46-18-221, MCA (1997), violates the multiple punishments proscription of the Montana Constitution. Weitzel, like the defendant in Guillaume, was

convicted of felony assault under § 45-5-202(2)(b), MCA (1997), for causing reasonable apprehension of serious bodily injury in another by "use of a weapon," and his sentence was then enhanced pursuant to § 46-18-221(1), MCA (1997), for having "used a . . . dangerous weapon" during the commission of that offense. As in <u>Guillaume</u>, since use of a weapon was an element of the underlying felony assault conviction, application of the weapon enhancement statute effectively punished Weitzel twice for use of a weapon in violation of Article II, Section 25 of the Montana Constitution.

¶43 Even though Weitzel failed to raise the double jeopardy issue in the District Court proceedings, the State concedes, and we agree, that this case must be remanded for resentencing in light of <u>Guillaume</u>. This Court has already invoked plain error review to reach the <u>Guillaume</u> issue on direct appeal, as the State indicates, because "[w]hether multiple punishments have been imposed in violation of a defendant's fundamental right to be free from double jeopardy brings into question the fundamental fairness of the proceedings and the integrity of the judicial process." State v. Brown, 1999 MT 31, ¶ 12, 293 Mont. 268, ¶ 12, 975 P.2d 321, ¶ 12; <u>see also</u> State v. Roullier, 1999 MT 37, ¶ 25, 293 Mont. 304, ¶ 25, 977 P.2d 970, ¶ 25; State v. Aguilar, 19/